### WILLIAM G. COMSTOCK vs. SAMUEL G. SAVAGE.

A note payable on its face at the *F. and Mechanics Bank* was declared on as payable at the *Farmers and Mechanics Bank.* Held that there was no necessary variance between the allegation and the proof,—that such mode of averment was the proper one where the term was used to designate that bank,—and that parol evidence was admissible to show that that bank must have been intended.

While a suit was pending, in favor of a holder against an endorser, on a negotiable note endorsed in blank, an arrangement was made between the plaintiff and A, under which the former was paid the full amount of the note and the latter assumed the prosecution of the suit. This arrangement was made by A on his own responsibility and he advanced his own funds, but was for the benefit of B, another endorser, who desired a recovery against the defendant. The transaction was claimed by the defendant, to be either a payment of the note by B, or a transfer of the legal title to it to A, and that it was a question of law to be decided by the court on the facts admitted. On the part of the plaintiff it was claimed on the evidence to be only an executory contract for the purchase of the judgment that should be recovered on the note. The court submitted the question as one of fact to the jury upon all the evidence, instructing them that if the note had been paid by B, or had been actually purchased by A, the plaintiff could not recover, but that if the arrangement was merely an executory contract for the future purchase of the judgment to be recovered, then it would constitute no defense to the action. Held that the court properly referred the question as one of fact to the jury, and that the instructions given with regard to the effect of such an executory contract were correct.

ASSUMPSIT against the defendant as indorser of the following note.

$1,000. Hartford, July 22, 1854, two months after date we

promise to pay to the order of Samuel Woodruff at the F. & Mechanics' Bank, one thousand dollars, value received. B. E. Mann & Co. [Endorsed,] Samuel Woodruff, Samuel G. Savage.

The plaintiff, who brought the suit as an endorsee of the note, had averred in his declaration that the makers had promised to pay *at the Farmers & Mechanics' Bank.* On the trial to the jury the defendant objected to the admission of the note in evidence, on the ground of a variance between it and the allegation of the declaration. The plaintiff, in connection with the note, offered parol evidence to show that it was a common usage, in drawing notes payable at the Farmers & Mechanics' Bank in the city of Hartford, to write the name of the bank in that manner,—that there was no other bank in the city that had the word " Mechanics " in its name, and that there was no other bank in the state by the name of Farmers & Mechanics' Bank,—that B. E. Mann & Co. and the defendant did their business at that bank and made notes payable there,—and that B. E. Mann & Co., Samuel Woodruff the payee, and the defendant, all resided in Hartford at the time the note was made. To this evidence the defendant objected, but the court admitted it, together with the note, and instructed the jury that it was for them to say, on all the evidence, whether the note was payable or not at the Farmers and Mechanics' Bank.

The defendant offered evidence to prove that the plaintiff commenced a suit against Samuel Woodruff the first indorser, at the same time that the present action was commenced, and that afterwards the attorney for Woodruff paid to the plaintiff's attorneys in this action the amount of the note and interest, and the taxable costs in the action against Woodruff; and that, on the same day, the plaintiff's attorneys paid the amount of the note and interest, so received by them, to the plaintiff, and took his receipt therefor; and so the defendant claimed that the note had been fully paid and satisfied. The defendant introduced the plaintiff as a witness, who testified, in substance, that he received and used the money as his own, and never agreed to refund it in any event; that,

at an interview had with Woodruff's counsel before the payment, he told him that all he wanted was to realize from the note, but that, as to the mode of effecting this, he was indifferent, and would leave it entirely in the hands of his counsel to arrange with him,—that he 'supposed it was so arranged, as he received the money, but as to the details of the arrangement, he was entirely ignorant.

The plaintiff's receipt, which was offered in evidence, was as follows : " *Wm. G. Comstock* v. *Samuel Woodruff.* Superior court. Rec'd Jan. 19, 1857, of Welles & Strong, attorneys in the above cause, $1,139, in full of the note in suit in the above cause; which money was paid to them for me, in pursuance of a contract entered into between me and R. D. Hubbard, Esq., attorney of said Woodruff. Wm. G. Comstock."

The plaintiff denied that there had been any payment of the note and offered evidence to prove the following facts regarding the transaction :—that the defendant was the person equitably bound to pay the debt, Woodruff being only his accommodation indorser ;—that the present suit stood, on the list, above the action against Woodruff, and was expected by all interested to be first tried ;—that the defendant had repeatedly assured Woodruff that there was a good defence to the note, and that he would make all the necessary preparation for the trial, and that, relying on these assurances, Woodruff had entirely omitted to prepare the case for trial, when at the time the case against Savage was reached, at the January term, 1857, by an arrangement between the counsel for the plaintiff and defendant in that case, it was agreed that the same should be continued ;—that by this arrangement, the action against Woodruff was in danger of being sacrificed, whereupon R. D. Hubbard, Esq., the counsel for Woodruff, but without his knowledge, applied to Comstock, the plaintiff, to take some measures to protect Woodruff and coerce payment from Savage; that Comstock replied that he only wanted the money, and if he could get that, would leave the mode and detail of the business entirely with his counsel;—that Mr. Hubbard thereupon applied to Com-

stock's counsel, who proposed to him that Woodruff, or some one for him, should buy the note;—that Mr. Hubbard rejected the proposal, saying that he would only make such a negotiation as would permit a collection of the note from Savage, in the suit then pending;—and that thereupon an agreement was made that he, Hubbard, should become the purchaser of the judgment which should finally be recovered in the suit against Savage, when the same should be recovered, and in the mean time that he should conduct the suit without expense to Comstock;—that as security for the fulfillment of the contract, he was to deposit, and did then deposit in the hands of Comstock's counsel, a sum of money, equal to the principal and interest due on the note, and the taxable costs in the suit against Woodruff, with the understanding that the same might be by them paid over to Comstock, and that it was so paid;—and that in all these negotiations, Mr. Hubbard acted in his individual capacity solely, and advanced his private funds, and Mr. Woodruff had no knowledge of the negotiations, and assumed no liability of any kind thereby. The note was endorsed in blank and had remained in the hands of Comstock's counsel.

The defendant's counsel requested the court to charge the jury, that the foregoing facts constituted in law a payment of the note, and that it was their duty so to find; and that if the same was not paid, the transaction constituted a purchase of the same by Mr. Hubbard, the effect of which, as the note was endorsed in blank, would be to vest the legal title to the same in him, by which means the title of the plaintiff would be divested, and he could not recover.

The court did not so charge the jury, but instructed them that if they should find, from all the evidence in the case, that there was a payment of the note, either by Mr. Woodruff or any one else, or if they should find that there was a purchase of the note by Mr. Hubbard, a buying of the same as a man would buy an article of merchandise,—then, in either case, the plaintiff could not recover; and that in determining these questions, the receipt given by the plaintiff and his admissions would be proper and important evidence to be

considered, but should be considered under the circumstances in which they were made; but that if they should find that the contract made by Mr. Hubbard was an agreement simply to purchase the claim in future, when it should go into judgment, and not before, and it was understood that no right, title or interest in the same should pass before the happening of that event, and there was no indorsement, assignment or delivery of the note at any time,—then such an agreement would not defeat the plaintiff's right to recover, although Mr. Hubbard advanced the amount of the note as collateral security for the future purchase or as the consideration of the same.

The jury having rendered a verdict for the plaintiff, the defendant moved for a new trial, for error in the rulings and charge of the court.

*Chapman* and *Fellowes*, in support of the motion.

1. The question submitted to the jury, as to the payment or sale of the note, was a question of law that should have been decided by the court. The facts were undisputed. The simple question therefore was, what was their legal effect. Mr. Hubbard purchased the note and paid the full value of it. The note was negotiable and endorsed in blank. These being the only facts, why is it not a sale in the eye of the law? What has the intention or understanding of the party to do with the legal effect of his acts? In *Curtis* v. *Bemis*, (26 Conn., 1,) the facts were essentially like those of this case, and it was held that such a sale of a negotiable note endorsed in blank defeated a suit that was pending on the note. Comstock testified that he received the money as his own and never expected to return it. This was not disputed. If the transaction was merely a purchase of the judgment when obtained, then he did not receive the money as he supposes, but is bound to return it if he fails to get a judgment. If the transaction was not a sale, then it was a payment. Comstock on receiving the money gave his receipt in full. It is indifferent to us whether it be regarded as a sale or a payment. In either event the suit could not be maintained.

2. The court erred in submitting the note to the jury for their determination as to what it meant. It was a question which the court should have decided for itself. It should have been alleged that the Farmers and Mechanics' Bank was the one intended by the note, to make such evidence admissible. The evidence admitted was in itself inadmissible, even if it was proper to receive parol evidence in explanation of the note.

*Hubbard,* contra.

1. There is no variance between the allegations of the declaration and the proof, if the meaning of the words " F. & Mechanics Bank " is in fact " Farmers and Mechanics Bank," and was so understood by the parties. It is always proper to aver according to the effect of language. *Peyton* v. *Tappan,* 1 Scam., 388. *Greathouse* v. *Kip,* 3 id., 371. *Rector* v. *Taylor,* 7 Eng., 128. *Wood* v. *Bulkley,* 13 Johns., 486. *Andrews* v. *Williams,* 11 Conn., 329. If this be so it was of course proper to show by evidence that the instrument meant what it was averred to be in the declaration. And this enquiry being proper, all the evidence admitted will be seen to be pertinent to it. Such evidence is always admitted where there is a latent ambiguity in an instrument. *Ayres* v. *Weed,* 16 Conn., 301.

2. The jury was the proper tribunal to decide as to the meaning of the term used. The question involved went to the fact of the contract, not to its construction. It was not a matter to be determined by the eye of the court, but was entirely a question of evidence. The plaintiff had alleged that the makers of the note promised to pay it at the Farmers and Mechanics' Bank. This was a part of his case, and was to be proved, like any other allegation of his declaration, to the jury; and they were to decide whether he had proved what he had averred. *Eaton* v. *Smith,* 20 Pick., 150.

3. The charge of the court as to the payment or sale of the note, has done no injustice to the defendant. The court charged that if the jury should find that the note had been paid, or, if not paid, that it had been sold, in either case the

plaintiff could not recover. The defendant can not complain of this. It was clearly a question of fact for the jury and not of law for the court, and the whole evidence was submitted to the jury for their consideration. If the contract was merely for the purchase of the judgment when obtained, a mere executory contract, then clearly the suit could not be affected by the arrangement.

HINMAN, J. The action is against the defendant as indorser of the note of B. E. Mann & Co., which is stated in the declaration to have been made payable at the Farmers and Mechanics' Bank in said Hartford, and as the note when produced in evidence appeared to be payable at the " F. & Mechanics' Bank," the defendant raised the question of variance between the declaration and the proof, and objected to the parol evidence introduced by the plaintiff, for the purpose of showing that the letter F. was intended as a mere substitute for the word "Farmers," and consequently that by the legal effect of the instrument it was in fact made payable at the Farmers and Mechanics' Bank in Hartford.

We think the superior court was correct in admitting this evidence, and in submitting the question to the jury to say whether the note was in fact payable at the Farmers and Mechanics' Bank, as averred in the declaration. We suppose that ever since the remark of Lord Mansfield in *Bristow* v. *Wright*, (Doug., 665,) in speaking of what part of a deed a party is bound to set forth in his declaration, that " it will be sufficient to state the substance and legal effect " of an instrument, this mode of declaring upon a written instrument has generally been considered as not only sufficient, but upon the whole the best. As intimated in that case, it is the shorter mode, and is not liable to misrecitals and technical mistakes. And the legal effect of this instrument depended upon the meaning which the parties attached to the letter F. as used in it. It was shown that there was no such institution as the " F. and Mechanics' Bank." This made the instrument ambiguous ; and it is familiar law that an ambiguity, which does not appear upon the face of an instru-

ment, but is raised by parol evidence, may also be explained by parol. When therefore it is shown that, although there is no such institution as the " F. and Mechanics' Bank," yet there is a well known bank which is commonly described in that way, and which the parties themselves were in the habit of so describing, it is made perfectly clear what they must have meant.

It is hardly necessary to refer to authorities on this point. They are very numerous and entirely satisfactory. We have several cases in our own reports which support the rulings at the circuit. *Phelps* v. *Riley*, 3 Conn., 266. *Chesnut Hill Reservoir Co.* v. *Chase*, 14 id., 123. *Nichols* v. *Lewis*, 15 id., 137. *Ayres* v. *Weed*, 16 id., 301. *Walbridge* v. *Arnold*, 21 id., 424.

There was evidence in the case tending to show that the note was paid, or that the legal title to it had passed from the plaintiff, since the commencement of the suit, and in either event it is obvious that the suit could no longer be maintained. The plaintiff's counsel, however, insisted that the transaction out of which the claim of payment originated, was a mere executory agreement on his part to become the purchaser of the judgment which should finally be recovered against the defendant. And, as security for the fulfillment of this agreement, he was to deposit, and did then deposit in the hands of the plaintiff's counsel, a sum of money equal to the principal and interest due on the note, and the taxable costs which had accrued in a suit against another indorser of the same note, with the understanding that the money might be paid over to the plaintiff, and that the suit should be conducted thereafter without expense to the plaintiff; and the money was accordingly immediately thereafter paid over to the plaintiff. It is true this agreement was entered into by the counsel of the other indorser of the note, and was done for the purpose of saving him from the eventual payment of the note. It was done however without any authority from him, and without his knowledge; and therefore done by a party under no obligation whatever to pay the note. Now an executory contract, to purchase

the future judgment that was expected to be recovered in the suit, is a legal contract, which the parties had a right to make; and might be, as it was claimed it was in this case, founded upon entirely equitable as well as legal considerations. Then if such a contract could be made which would not amount to payment or to a transfer of the legal title to the note, the question whether such a contract was made and the money advanced as security under it, or whether it was advanced as payment of the note, would be a question of fact depending upon the intention of the parties. As such it was, we think, correctly submitted to the jury, whose finding upon it ought to be conclusive. We do not therefore advise a new trial.

In this opinion the other judges concurred.

New trial not advised.