FLORENCE BOSCHEN ET AL. *v.* THE SECOND NATIONAL BANK OF NEW HAVEN, EXECUTOR (ESTATE OF ALMA C. STREITLEIN), ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued December 8, 1943—decided January 19, 1944.

*Frederick H. Wiggin,* with whom was *Catherine J. Tilson,* for the appellant (named defendant).

*Charles M. Lyman,* with whom was *Edward L. Reynolds,* for the appellees (plaintiffs).

BROWN, J.  Alma C. Streitlein of New Haven died on February 15, 1942, leaving an instrument dated January 27, 1940, and another dated May 27, 1940, which on May 2, 1942, were admitted to probate as her last will and codicil respectively.  From this decree the plaintiffs appealed to the Superior Court alleging that the deceased was of unsound mind and lacked testamentary capacity.  By their verdict the jury found the issues for the plaintiffs.  The named defendant appeals from the denial of its motion to set aside the verdict and also from the judgment, assigning errors relating to the charge and rulings upon evidence.

The maiden name of the testatrix was Alma Celestine de Beust.  She was born in East Haven on July 19, 1860, and was twice married, first to Louis Streitlein, who died in 1915, and second in 1922 to William Stietz, from whom she obtained a divorce July 10, 1934.  There was no issue of either marriage, but she adopted the plaintiff Florence as her daughter in 1908.  The other plaintiff, Walter Boschen, is the only nephew

and natural heir of the testatrix, being the son of her deceased sister. The named defendant is the executor named in the will. The estate inventoried approximately $50,000. By the will, the testatrix, after bequeathing all of her jewelry and linen to Walter and five dollars to Florence, and making several other relatively minor bequests, left all of the residue to the General Hospital Society of Connecticut, the net income to be applied toward maintaining free beds for poor and deserving women patients at its hospital in New Haven. By the codicil the bequest to Walter was revoked and one of five dollars substituted, and the will was republished and confirmed in all other respects. At the trial the defendant offered the uncontradicted evidence of the attorney who prepared the will and codicil, and that of the other attesting witnesses, of the due execution of both instruments.

The evidence upon the issue of testamentary capacity was voluminous. An examination of it discloses little which substantiates the claim of the plaintiffs that the testatrix was of unsound mind. However, as we find error on the appeal from the judgment, it is not necessary to consider whether the verdict should have been set aside.

The defendant claims that the court erred in charging that the will would not be valid unless its due execution appeared from the testimony of the attesting witnesses, its contention being that, since the plaintiffs' only reasons of appeal were that the testatrix was of unsound mind and lacked testamentary capacity, the issue of due execution should not have been submitted to the jury. The appeal from the judgment of the Probate Court accepting the will took up to the Superior Court for retrial the special statutory issue whether there was a valid will, to be decided in the same manner as if it had not been decided in

the Probate Court, and the burden of proving it rested upon the defendant as the proponent of the will. *Comstock* v. *Hadlyme Ecclesiastical Society,* 8 Conn. 254, 261. The filing by the plaintiffs of their reasons of appeal was effective to limit thereto the introduction of evidence by them, but did not and could not change the statutory issue as to the validity of the will, or relieve the defendant of the burden of proving due execution as well as testamentary capacity. *Livingston's Appeal,* 63 Conn. 68, 75, 26 Atl. 470; see *Lockwood* v. *Lockwood,* 80 Conn. 513, 520, 69 Atl. 8; *Pope* v. *Rogers,* 93 Conn. 53, 55, 104 Atl. 241; *Kast* v. *Turley,* 111 Conn. 253, 256, 149 Atl. 673. Where, as in this case, there is undisputed evidence sufficient to satisfy any reasonable mind that the will has been duly executed and those attacking it make no claim to the contrary, it is at least the better practice to instruct the jury to find that it has been duly executed.

The defendant further claims that the charge was erroneous in prescribing as requisite a higher standard of mental capacity in the testatrix than the law requires. The gist of the defendant's complaint is that the court, while it gave to the jury the recognized test of testamentary capacity repeatedly approved by this court, in addition suggested certain further considerations which were incorrect and confusing. While the language of the charge might better have been restricted to the definitions and explanations of testamentary capacity set forth in the previous decisions of this court, we cannot say that there was error in the respect referred to.

Another claim of the defendant is that the court erred in its charge on the subject of delusions. Evidence primarily relied upon by the plaintiffs to prove lack of testamentary capacity, as shown by their claims of proof, included testimony of delusions had

by the testatrix some years prior to her execution of the will. These were of two kinds. Among the first were her beliefs that she had no relative, that Florence had gotten married without her consent and that Walter was trying to get her property; and among the second were those indicated by accusations, claimed to have been unfounded, against her first husband, who predeceased her by twenty-seven years, and against her second husband, from whom she had been divorced and who had died several years before the will was executed, and by her claim that she was a descendant of Catherine the Great of Russia. The following comprised the court's instructions concerning this subject: "False beliefs—and we have had considerable produced here in reference to so-called delusions, and I will come to that subject in a moment— false beliefs are common to men, and false beliefs may be the result of mere mistakes. They are not necessarily indications of mental unsoundness, and do not necessarily indicate that a person entertaining such false beliefs could not lawfully make a will. . . . I said a few moments ago that I would refer again to the subject of delusions which has been mentioned here in this trial, it being one of the claims of the attorneys for the appellants, and by their claim that Mrs. Streitlein for many years prior to the time when she signed these instruments entertained fixed delusions which were insane delusions, and that thereby her mind was rendered unsound. Now, you should have in mind that an insane delusion is a false belief for which there is no reasonable foundation which would be incredible under the given circumstances to the same person if of sound mind and concerning which the mind of the decedent was not open to permanent disabusing."

From this language, without more, pointing out as it does that false beliefs may be the result of mere

mistakes, and so not necessarily indicative of mental unsoundness and incapacity to make a will, but that the plaintiffs' claim was that the testatrix was the victim of insane delusions as defined and thereby her mind rendered unsound, the only reasonable implication was that should the jury find that the testatrix did have such delusions it would follow that she was of unsound mind and incapable of making a will. No further instruction to counteract the impression so conveyed is to be found in the charge. The proposition thus propounded was erroneous. The court should have charged that a delusion could in no event invalidate a will unless it was operative at the very time of its execution, and that a testatrix may harbor insane delusions on some subjects and still have testamentary capacity, because only those delusions which affect the testamentary disposition will, in and of themselves, render a will invalid. *Dunham's Appeal,* 27 Conn. 191, 202; *Kimberly's Appeal,* 68 Conn. 428, 439, 36 Atl. 847, 1 Page, Wills, § 158; 28 R.C.L. 104; 68 C.J. 435. "A delusion affects testamentary capacity only when it enters into or controls in some degree its exercise." *Matter of Heaton,* 224 N.Y. 22, 29, 120 N.E. 83; *Pendarvis* v. *Gibb,* 328 Ill. 282, 292, 159 N.E. 353. Typical examples of delusions which might affect testamentary capacity are those concerning the testator's property (*McReynolds* v. *Smith,* 172 Ind. 336, 344, 347, 86 N.E. 1009) or the natural objects of his bounty (*Kimberly's Appeal,* supra, 431, and *Mills's Appeal,* 44 Conn. 484, 486).

A reasonable interpretation of the finding indicates that, while the above recited delusions of the testatrix concerning her relatives might fairly be construed to have affected her testamentary capacity within the principles just stated, those of the second kind held by her clearly could not. A finding by the jury, pur-

suant to the instruction complained of, of lack of testamentary capacity predicated upon these latter delusions would be unwarranted as a matter of law. As already suggested, a significant part of the scant testimony offered by the plaintiffs in support of their claim of a lack of such capacity in the testatrix was that of delusions. Under the circumstances, the court's instruction constituted reversible error. The defendant's final claim that the court erred in admitting certain testimony concerning characteristics of the testatrix, because it was immaterial as too remote, is without merit.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.