JOHN E. LANCASTER ET AL. *v.* THE BANK OF NEW YORK, EXECUTOR (ESTATE OF ROBERT A. LANCASTER)

THE BANK OF NEW YORK, EXECUTOR (ESTATE OF ROBERT A. LANCASTER) *v.* JOHN E. LANCASTER ET AL.

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

Argued June 8—decided July 19, 1960

*Palmer S. McGee, Jr.,* for the appellant (defendant in the first case and plaintiff in the second).

*Morgan P. Ames,* with whom, on the brief, was *Edward R. McPherson, Jr.,* for the appellees (plaintiffs in the first case and defendants in the second).

KING, J. On August 12, 1957, the Probate Court for the district of Ridgefield entered a decree ad-

mitting to probate the last will and testament of Robert A. Lancaster, a bachelor, who died, a resident of Ridgefield, on May 7, 1957, leaving a gross estate well in excess of $100,000. From this decree the contestants, who are the decedent's heirs at law, appealed to the Superior Court. The reasons of appeal raised the two statutory issues of due execution and testamentary capacity. General Statutes §§ 45-160, 45-161; *Crane* v. *Manchester,* 143 Conn. 498, 501, 123 A.2d 752, and cases cited. They also included a claim that the will, which was executed April 25, 1957, was the product of undue influence brought to bear on the testator by Mrs. Mabel M. Chisolm, who was the principal beneficiary under the will and in whose apartment the testator lay ill while the will was being prepared and executed. Upon a trial to the jury, a verdict that the will was invalid was rendered on March 19, 1958. The jury's answers to interrogatories established that the issue of testamentary capacity was found in favor of the proponent and the issue of undue influence in favor of the contestants. Apparently due execution, on which the proponent offered evidence, was quite properly not questioned by the contestants. See *Doolittle* v. *Upson,* 138 Conn. 642, 643, 88 A.2d 334; *Boschen* v. *Second National Bank of New Haven,* 130 Conn. 501, 504, 35 A.2d 849. The proponent's motion to set aside the verdict as against the law and the evidence was denied, without memorandum, on May 23, 1958. From the judgment entered on the verdict on May 23, 1958, the proponent appealed on June 3, 1958. On January 7, 1959, the proponent filed its assignment of errors, claiming error in the denial of its motion to set aside the verdict as against the evidence and in three rulings on evidence.

In the meantime, by complaint served on November 26, 1958, six months after the entry of judgment in the probate appeal, the proponent instituted a petition for a new trial of the probate appeal on the claim of newly discovered evidence. The petition was ultimately denied, and an appeal from that judgment is consolidated with the appeal from the judgment in the appeal from probate. If reversible error occurred in the appeal from probate, the proponent would obtain a new trial and it would be unnecessary to consider the petition for a new trial. Accordingly, we first turn to the assignments of error in the appeal from probate. Three of these attack rulings on evidence.

Counsel for the contestants read the direct testimony of Dr. Grafton E. Burke as given in a deposition which had been taken by the proponent. Dr. Burke had first attended the decedent in Mrs. Chisolm's apartment on April 24, 1957, which was the day before the will was executed and the day before the decedent was taken to the hospital. The decedent had a cancer of the groin which proved fatal. The proponent objected to a question asked of Dr. Burke during his cross-examination by the contestants. The objection was not addressed merely to the form of the question, and therefore it properly was made during the reading of the deposition at the trial. *Rusch* v. *Cox*, 130 Conn. 26, 35, 31 A.2d 457. The finding states that no ground for the objection was given. The objection was overruled and the proponent excepted. Since no ground for the objection was stated, we cannot find error in the court's action in overruling it. See *Coupland* v. *Housatonic R. Co.*, 61 Conn. 531, 552, 23 A. 870; Practice Book § 155.

Mrs. Doris Chapman was called as a witness by

the contestants and testified that she had assisted Mrs. Chisolm daily in caring for the decedent in her apartment during the week before he was taken to the hospital. The finding states that Mrs. Chapman was called by the contestants "to testify on certain very limited issues," which "did not include any conversations by Lancaster concerning hospitalization." On her cross-examination, the court excluded, as beyond the scope of the direct examination, a question as to whether the decedent had ever indicated to her or to Mrs. Chisolm his wishes in regard to going to the hospital. The ruling was correct. *Finch* v. *Weiner,* 109 Conn. 616, 619, 145 A. 31. Furthermore, the finding discloses that, later on, in the rebuttal portion of the proponent's case, Mrs. Chapman was called as the proponent's witness and testified that the decedent told her that he did not want to go to the hospital. Even if the ruling excluding the cross-examination had been erroneous, the subsequent testimony would have rendered the error harmless and therefore immaterial.

Twelve of the seventeen witnesses called by the contestants testified by deposition and were not present at the trial. One of these deponents was Dr. Charles H. Armando Krebs. Krebs had received a degree in medicine from a European university; he did not practice medicine in this country and to a considerable extent devoted himself to music. Mrs. Chisolm was also interested in music and had sung professionally. He and Mrs. Chisolm had become acquainted, because of their common interest in music, while returning from Europe on the same ship. When the decedent lay ill in Mrs. Chisolm's apartment, Krebs called several times a week at one period in connection with a European concert tour which he was arranging for Mrs. Chisolm. His dep-

osition was taken in New York at the instance of the contestants. Included among those present at the taking of the deposition were counsel for the contestants, counsel for the proponent, and Mrs. Chisolm's personal counsel, Alfred Rice. Krebs spoke and wrote English so imperfectly as to be frequently unintelligible. At the outset of the taking of the deposition, after he was sworn, he asked for an interpreter. This precipitated a long colloquy, preliminary to the deposition proper, between Krebs and the three attorneys. The discussion ranged over a variety of topics. Counsel for the proponent, aided by Rice, attempted to persuade Krebs to refuse to testify at all, on the ground that he had not been served with a subpoena and on the further ground that he was entitled to consult counsel of his own. Krebs testified to efforts of unknown persons to influence his testimony by threats and intimidation. Finally, he decided that he needed no lawyer but did need a German interpreter. Thereupon a German interpreter was obtained and Krebs was resworn and gave his deposition.

When the deposition proper was offered at the trial, counsel for the proponent claimed that if all or any part of it was to be read in evidence the entire preliminary colloquy should also be read because it bore on the weight to be given to Krebs's testimony. The court refused to permit the preliminary colloquy to be read, pointing out that some parts of it were inadmissible for any purpose. To this ruling an exception was taken. It may be that certain portions of the colloquy could properly have been admitted as bearing on the credibility of the witness. No such claim, however, was made. The claim was that the entire colloquy should be read to the jury. The court was not in error in overruling it.

*Johnson* v. *Rockaway Bus Corporation,* 145 Conn. 204, 210, 140 A.2d 708.

The final assignment of error is based on the court's refusal to set aside the verdict as against the evidence. We are hampered in our review of this ruling by the court's failure to file any memorandum accompanying and explaining its denial of the motion. See cases such as *Lupak* v. *Karalekas,* 147 Conn. 432, 433, 162 A.2d 180; *Kerrigan* v. *Detroit Steel Corporation,* 146 Conn. 658, 663, 151 A.2d 517 (dissenting opinion). While a memorandum of decision is not legally required on the denial of a motion to set aside the verdict, but only on the granting of it (Practice Book § 163), it is sound practice, where, as in this case, the motion is not frivolous, to set forth in a memorandum the basic reasons why the motion is denied.

The court held as matter of law that Mrs. Chisolm's relationship to the decedent was not of a confidential nature so as to relieve the contestants of the burden of proving undue influence. *Page* v. *Phelps,* 108 Conn. 572, 584, 143 A. 890; *Berkowitz* v. *Berkowitz,* 147 Conn. 474, 476, 162 A.2d 709. Recently, we had occasion to summarize our law on the meaning of the term "undue influence" as applied to will contests. *Lee* v. *Horrigan,* 140 Conn. 232, 237, 98 A.2d 909, and cases cited. Direct evidence of undue influence is often unavailable and is not indispensable. *Salvatore* v. *Hayden,* 144 Conn. 437, 440, 133 A.2d 622. On the other hand, the mere opportunity of exerting undue influence, which of course existed to a marked degree in the present case, is not alone sufficient. *Richmond's Appeal,* 59 Conn. 226, 246, 22 A. 82; *Hills* v. *Hart,* 88 Conn. 394, 402, 91 A. 257. There must be proof not only of undue influence but that its operative effect was to

cause the testator to make a will which did not express his actual testamentary desires. *Hills* v. *Hart*, supra, 401. Of course, the will here disregarded to a great extent the testator's heirs at law, that is, his brother and the two children of his deceased sister, and left the bulk of his estate to one wholly unrelated to him. If the jury found that such a disposition was unjust and unreasonable, then that disposition would be circumstantial evidence tending to prove undue influence. *Salvatore* v. *Hayden*, supra, 441. Whether the disposition was unjust and unreasonable was a question of fact for the jury and depended to a considerable extent on what the jury found, from the evidence, was the testator's true relationship with, and feeling toward, his heirs at law, on the one hand, and Mrs. Chisolm, on the other hand. *Doolittle* v. *Upson*, 138 Conn. 642, 645, 88 A.2d 334.

There was testimony by Mrs. Rita Michaelson that she first met the decedent at a New Year's eve party on December 31, 1955, and that thereafter she was in his company once or twice a week until February, 1957, when he had a severe hemorrhage, could no longer live alone, and went to Mrs. Chisolm's apartment. Mrs. Michaelson further testified that the decedent had told her that they would get married in about two years but that it would not do to let Mrs. Chisolm know that they were in each other's company, because then "all hell" would break loose; that he frequently told her that he was under some pressure from Mrs. Chisolm; that during the first week in February, 1957, the decedent, in a visit to the apartment of Mrs. Michaelson, told her that he had a problem and showed her the growth on his body; that on the Friday before Lincoln's Birthday she saw him twice and the growth was again dis-

cussed; and that thereafter she did not see him or have any communication with him until after he had been taken to the hospital on April 25. There was also evidence that Mrs. Chisolm failed to notify any of the friends or relatives of the decedent during the two months in which he lay ill in her apartment. He was obviously a very sick man at the time the will was executed, and his illness might be found to have affected his susceptibility to undue influence. See *Hills* v. *Hart,* supra, 397.

Whether Mrs. Chisolm was actually present in the room (other than momentarily when she was summoned to find the decedent's glasses for him) during the actual execution of the will, as Krebs testified, is not of controlling importance, since it would be unlikely that she would exert any influence upon him in the presence of the witnesses to the will and the lawyer who drew it, none of whom were well acquainted with her. While the undue influence, to justify the verdict, had to be operative to produce a will which did not reflect the testator's free will and true testamentary desires, its actual exertion, if it was exerted, would be likely to precede the testator's giving of instructions to the scrivener and the execution of the will itself. See *Jackson* v. *Waller,* 126 Conn. 294, 302, 10 A.2d 763; *Richmond's Appeal,* supra; *Hills* v. *Hart,* supra, 401. The jury, had they accepted the proponent's evidence, would quite properly have found in favor of the will on the issue of undue influence. But we cannot say that they could not reasonably find, as they did, that the contestants sustained their burden of proving undue influence on Mrs. Chisolm's part. We would reach the same result even without Krebs's testimony, which also tended to indicate undue influence and which we shall consider in more detail in connection with the

appeal from the judgment denying the petition for a new trial. There was no error in the refusal to set aside the verdict.

Since there is no error on the appeal from probate, it becomes necessary to consider the appeal from the judgment denying the petition for a new trial. The assignments of error are two in number and complain of (a) the sustaining of a demurrer to the original complaint in the petition and (b) the expunging of what the petitioner terms an amended complaint, filed after the sustaining of the demurrer. Since the amended complaint was complete in itself and entirely superseded the original complaint, it is more accurately termed a substitute complaint. The motion to expunge was made on the ground that the substitute complaint merely repeated, in substance, the allegations in the original complaint, which had been adjudged insufficient when the demurrer was sustained. *Fidelity & Casualty Ins. Co.* v. *Sears, Roebuck & Co.,* 124 Conn. 227, 236, 199 A. 93; *Goldberg* v. *Kaplan,* 101 Conn. 432, 438, 126 A. 329. The substitute complaint differed from the original complaint only in a single paragraph, in which certain allegations of the original complaint were made more general and certain factual inaccuracies of statement were changed, if not corrected. For reasons which will hereinafter appear, there was no error in sustaining the demurrer to the original complaint, nor would there have been had the original complaint been identical with the substitute complaint. Since the substitute complaint is, as pointed out, more nearly accurate, we have decided to consider the ruling on the demurrer as though it had been addressed to the substitute complaint.

The substitute complaint alleged, in essence, that by far the most important testimony in support of

the issue of undue influence was that of Krebs, who testified that he had been in Mrs. Chisolm's apartment the day the will was executed and who described the actions of Mrs. Chisolm on that day, before and after the execution; that Krebs had written a letter to Mrs. Chisolm, dated May 9, 1957, two days after the testator's death; that this letter, which was incorporated in the petition, stated, if properly construed, that Krebs had not seen Mrs. Chisolm between April 19, 1957, and May 9, 1957; that it therefore disclosed the inaccuracy of the testimony of Krebs that he was in the apartment on April 25, 1957, when the will was executed and the consequent injustice of the verdict and the judgment; and that therefore a new trial was warranted. Affidavits of various persons were attached, including an affidavit by the trial attorney for the proponent that he had not been advised prior to the trial of the letter of May 9, 1957, and did not know of it until about October 7, 1958, and an affidavit of Mrs. Chisolm that she had received the letter a few days after the testator's death. The contestants demurred to the complaint on a number of grounds, among which was that the proposed new evidence at most merely affected the credibility of the witness Krebs. We confine our discussion to this ground, since it is dispositive of, and fatal to, the appeal.

Krebs, though an important witness, was not a party and could make no admissions. The letter would be admissible only as an inconsistent statement to affect his credibility. It would not be evidence of the truth of any statement of fact contained in it. The plaintiff seems to claim that the letter was evidence that Krebs was not in Mrs. Chisolm's apartment on the day the will was executed. Such a claim is erroneous. *Sears* v. *Curtis,* 147

Conn. 311, 316, 160 A.2d 742. The effect of the letter, at most, would be to throw doubt on Krebs's testimony that he was in the apartment that day. Where claimed newly discovered evidence would merely affect the credibility of a witness, it is not a ground for a new trial unless it is reasonably probable that on a new trial there would be a different result. *Turner* v. *Scanlon,* 146 Conn. 149, 163, 148 A.2d 334; *Smith* v. *State,* 139 Conn. 249, 251, 93 A.2d 296; *Apter* v. *Jordan,* 94 Conn. 139, 142, 108 A. 548; *Husted* v. *Mead,* 58 Conn. 55, 62, 19 A. 233; *Tappin* v. *Clarke,* 32 Conn. 367, 369. Only under most exceptional circumstances, even in a capital case, could a witness' testimony be so important and influential that a court could, within the limits of a sound discretion, determine that new evidence merely impeaching the witness' credibility would probably produce a different result. See *Taborsky* v. *State,* 142 Conn. 619, 632, 116 A.2d 433; *Smith* v. *State,* supra, 253. The rule restricting the right to a new trial when one is claimed on the basis of newly discovered evidence merely affecting the credibility of a witness is necessary because "scarcely has there been an important trial, with many witnesses, where [after the trial] diligent search would not have discovered evidence [to impeach the character of] some witness on the trial." *Tappin* v. *Clarke,* supra. Without such a rule, "there might never be an end to litigation." *Turner* v. *Scanlon,* supra.

As has already been pointed out in the discussion of the claim that the verdict was against the evidence on the issue of undue influence, there was sufficient evidence to support the verdict even without Krebs's testimony. Furthermore, as previously noted, Krebs both spoke and wrote English so imperfectly that it is not entirely certain that the

letter is inconsistent with his testimony. There is also the closely allied question, which would not be at all likely to arise in the case of one facile in writing English, whether he actually intended to convey the meaning which he seems somewhat uncertainly to have expressed in the letter. On a new trial, he would undoubtedly be allowed to explain what he did mean by this ambiguous and rather unintelligible missive. *Bredow* v. *Woll,* 111 Conn. 261, 264, 149 A. 772.

Even if it is assumed that the letter would be so construed as to be inconsistent with Krebs's testimony concerning the execution of the will, it could not be said that the result of a new trial would probably be different. That there might possibly be a different result would not justify the overruling of the demurrer. The memorandum of decision sustaining the demurrer discloses that the trial court, after comparing the testimony as given on the trial with the allegations in the petition for a new trial, together with the exhibits attached, decided whether, within the limits of a sound discretion, a court could grant a new trial. This was the correct test. *Link* v. *State,* 114 Conn. 102, 107, 157 A. 867. The proposed new evidence was inadequate to support the exercise of a discretion to grant a new trial. This is true whether we consider the original complaint or the substitute complaint, and there was consequently no error either in sustaining the demurrer or in expunging the substitute complaint. The court did not base its decision sustaining the demurrer squarely on the ground we have discussed; but where, as here, one ground of demurrer is efficacious, error cannot be predicated on the fact that the demurrer was sustained on another, even if erroneous, ground. *Turrill* v. *Erskine,* 134 Conn. 16, 20, 54

A.2d 494; Maltbie, Conn. App. Proc. § 65, and cases cited. It is therefore unnecessary to consider the other grounds of demurrer or the contestants' bill of exceptions.

There is no error in either case.

In this opinion the other judges concurred.