RICHARD CALLENDER *v.* LAKEWOOD REALTY COMPANY, INC., ET AL.

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 14-666-23020

Argued May 15—decided August 4, 1967

*Robert L. Trowbridge,* of Hartford, for the appellants (defendants).

*Seymour P. Dunn,* of Hartford, for the appellee (plaintiff).

JACOBS, J.  The plaintiff sued to recover damages for personal injuries resulting from a blast of gas which exploded while he was attempting to light the gas oven in Richard's Bake Shop, owned and operated by the defendants, and located in the town of Wethersfield.  Trial in the court below resulted in a verdict and judgment in favor of the plaintiff for $2500.  On this appeal from the judgment, the defendants claim that the court erred (1) in denying the defendants' motion to set aside the verdict because the verdict was not supported by the evidence and the damages awarded were excessive; and (2) in refusing to charge the jury as requested.

We first consider the attack upon the denial of the motion to set aside the verdict upon the ground

of insufficiency of the evidence. For the attack on the court's refusal to set aside the verdict to succeed, it must appear that the evidence furnished no reasonable basis for the conclusion of the jury that the defendants were negligent and that they failed to sustain their burden of proving that the plaintiff was chargeable with contributory negligence and had assumed the risk of what befell him. See *Petrizzo* v. *Commercial Contractors Corporation,* 152 Conn. 491, 499. "In our approach to that issue, the evidence must be given the most favorable construction to which it is reasonably entitled in support of the verdict." Ibid.; see *Lombardi* v. *J. A. Bergren Dairy Farms, Inc.,* 153 Conn. 19, 23; *Petrillo* v. *Bess,* 149 Conn. 166, 167. "We are hampered in our review of this ruling by the court's failure to file any memorandum accompanying and explaining its denial of the motion. . . . While a memorandum of decision is not legally required on the denial of a motion to set aside the verdict, but only on the granting of it [Practice Book § 256], it is sound practice, where, as in this case, the motion is not frivolous, to set forth in a memorandum the basic reasons why the motion is denied." *Lancaster* v. *Bank of New York,* 147 Conn. 566, 573; see *Lombardi* v. *J. A. Bergren Dairy Farms, Inc.,* supra, 21. "Even without such a memorandum, however, the court's denial of the motion is entitled to considerable weight. Although we have not the reassurance which a carefully prepared memorandum would have furnished, we should assume that the court properly performed its function in passing upon the motion." *Lupak* v. *Karalekas,* 147 Conn. 432, 433; see *Putney* v. *Lehigh Truck Equipment Corporation,* 145 Conn. 731, 732.[2]

---

[2] The record contains no memorandum on the defendants' motion to set aside the verdict. The court's ruling is contained in the docket entry which reads as follows: "Motion to set aside verdict—filed—Denied 10/11/66, *Martin, J.*"

There was evidence in the record from which the jury could have found these operative facts: For a period of some seven years prior to March 15, 1964, the plaintiff owned and operated Richard's Bake Shop, in Wethersfield. In the latter part of December, 1963, the plaintiff decided to put the bakery shop up for sale and, in pursuance of his plans, placed an advertisement for the sale of his business in a newspaper. Abraham Piasek, the other defendant in this action, was the only prospective customer who responded to the advertisement and came forward with a reasonable offer. Negotiations leading to the sale were carried on. For a week prior to the consummation of the sale of the business, Piasek came to the bakery every day and was fully and carefully instructed by the plaintiff on the normal day-to-day operation of the bakery business, including the proper method of lighting the oven. The oven was of a Ferris-wheel type, electrically driven, but was gas-fired for baking purposes. The main gas supply of the burners passed through a thermostatically controlled regulator so contrived that, when the desired heat was attained, the supply was automatically cut off, but when the temperature fell below the required level, the supply recommenced to pass through the burners. The master control switch controlled the flow of gas into the burners, but the pilot light remained at all times independent of and separate from the master control. In other words, the burners could be shut off and the supply of gas cut off, but the pilot light remained unaffected by either the master control switch or the flow of gas into the burners. On March 16, 1964, the last day of business prior to the transfer of title from the plaintiff to the defendants, the plaintiff, in the presence of Piasek, turned off the master control switch, put out the pilot light, and shut down the oven wall.

On March 17, 1964, at about 5 a.m., Piasek called the plaintiff by telephone and reported that he undertook to fire the oven but was unable to do so. The plaintiff, who lived in Windsor, got dressed and proceeded at once to the bakery. Upon his arrival there, Piasek told the plaintiff that he had shut off the flow of gas into the burners, whereupon the plaintiff, as was his long-established custom over the years, obtained a straw and "lit the straw [at] waist level; then reached down into the slot where the pilot light . . . [was located] . . . [and before he] had a chance to do that, the oven blew." The force of the explosion knocked the plaintiff over backwards; the front windows of the bakery were blown out and the glass showcases and partitions were shattered. As an aftermath of the explosion, the plaintiff suffered first- and second-degree burns of the face and second-degree burns of the dorsum of the right hand; his mouth and lips were blistered and his eyebrows burned. He was disabled to the extent that he was out of work for a period of eleven days.

The defendants were sued in negligence. Negligence is a breach of duty. Ordinarily, a conclusion of negligence is one of fact. *Cappiello* v. *Haselman*, 154 Conn. 490, 495; *Palombizio* v. *Murphy*, 146 Conn. 352, 358; 65A C.J.S., Negligence, § 269; 9 Wigmore, Evidence (3d Ed.) § 2552. This is so because "the law itself furnishes no certain, specific, sufficient standard of conduct, and, of necessity, leaves the trier to determine, both what the conduct is, and whether it comes up to the standard, as such standard exists in the mind of the trier. In a case of this kind the inference or conclusion of the trier, upon the question whether the ascertained conduct does or does not come up to such standard, is . . . called a question of fact, and, generally speaking, it cannot be reviewed by this court. If such infer-

ence is drawn by a jury, it is final and conclusive, because their opinion of what a man of ordinary prudence would or would not do, under the circumstances, is the rule of decision in that special case." *Farrell* v. *Waterbury Horse R. Co.,* 60 Conn. 239, 250; see *Cappiello* v. *Haselman,* supra; *Palombizio* v. *Murphy,* supra.

It was the claim of the defendants that on the issue of negligence the jury were "left to guess as to the cause of the explosion as there was not one word of testimony on causation." "In short," the defendants contended, "the plaintiff failed to introduce any evidence of any negligent act of the defendants on which the jury could predicate a finding of liability." We cannot agree with this contention.

It was incumbent upon the plaintiff to allege some recognizable cause of action in his complaint. *Lombardi* v. *J. A. Bergren Dairy Farms, Inc.,* 153 Conn. 19, 22; *Stavnezer* v. *Sage-Allen & Co.,* 146 Conn. 460, 461. Moreover, "[i]n a negligence action it is incumbent upon the plaintiff to allege and prove not only the negligence of the defendant but a causal relation between the negligence alleged and the damages claimed. A causal relation between the defendant's wrongful conduct and the plaintiff's injuries is a fundamental element without which a plaintiff has no case. Hence, this causal relation must be alleged and proved." *Lombardi* v. *J. A. Bergren Dairy Farms, Inc.,* supra. "In the establishment of causation between negligence and injuries which follow, the court is not concerned with possibilities but with reasonable probabilities. . . . The correct method of determining the existence of the causal relationship is to look back from the injury to the negligent act." *Palombizio* v. *Murphy,* supra. "The test to be applied was, 'would

the ordinary man in . . . [Piasek's] position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?'" *Collins* v. *City National Bank & Trust Co.*, 131 Conn. 167, 170. "In the last resort, the practical task of drawing the line where recovery should cease is one which defies precise verbal definition and formulation in fixed rules." Fleming, Torts, p. 186. "[T]he law must abstract some consequences as relevant, not perhaps on grounds of pure logic but simply for practical reasons." Lord Wright in *The Edison,* [1933] A.C. 449, 460. It can readily be seen from what we have said, particularly from the fact that Piasek failed to warn the plaintiff that he had not shut off the flow of gas into the burners, that Piasek knew, or should have known, that he was exposing the plaintiff to harm. A further point should be noted here. "Knowledge is fundamental to liability for negligence. The very concept of negligence presupposes that the actor either does foresee an unreasonable risk of injury, or could foresee it if he conducted himself as a reasonably prudent man. Foreseeability of harm, in turn, unless it is to depend on supernatural revelation, must depend on knowledge." 2 Harper & James, Torts § 16.5, p. 907; 38 Am. Jur., Negligence, § 25. In the case at bar, Piasek was no stranger to the bakery business. He testified that he had been a baker for a period of about fourteen years prior to the date of the trial and had considerable experience with gas-fired ovens. Thus, it is apparent to us that the conclusion of the jury that Piasek was negligent was a reasonable one under the circumstances.

The questions as to the plaintiff's contributory negligence and assumption of risk were also issues of fact for the jury's determination. *Petrizzo* v. *Commercial Contractors Corporation,* 152 Conn.

491, 500, and cases cited; see 65A C.J.S., Negligence, § 251 (2); 2 Harper & James, Torts § 21.2, p. 1169 n.8; 38 Am. Jur., Negligence, §§ 348, 349. Proof of the plaintiff's contributory negligence, including all the elements necessary to establish the defense, rested with the defendants. General Statutes § 52-114; *Cappiello* v. *Haselman,* 154 Conn. 490, 497. The degree of judgment and presence of mind expected of the plaintiff are what would have been reasonable conduct in such a situation, and he will not be adjudged guilty of contributory negligence merely because, as it turns out from subsequent events, he unwittingly took the wrong course. Moreover, where, as in this case, "the trier concludes that one is free from contributory negligence, that conclusion must stand unless 'the conduct involved is manifestly contrary to that of the reasonably prudent man.' . . . The conduct of the plaintiff cannot be so categorized." *Cappiello* v. *Haselman,* supra; see *Faille* v. *Hollett,* 150 Conn. 397, 400.

There was no error in the refusal to set aside the verdict. It imports that the jury must have found that the defendants were negligent in the premises in respect to a matter which was a proximate cause of the injury to the plaintiff. Moreover, it is clear that there was evidence upon which this conclusion could have been reached by the jury as reasonable men.

The complaint alleged that the plaintiff "received and suffered some permanent scarring" of the injured areas. He was treated by Dr. Robert W. Painter for injuries to his eye. The burns were treated by Dr. Malcolm S. Roth. The plaintiff offered neither Dr. Painter nor Dr. Roth as witnesses at the trial; instead, the plaintiff offered as a witness Dr. Phillip Goldman, a specialist in skin diseases, who had neither seen nor treated the plain-

tiff for his injuries. On this branch of the case, the court charged the jury as follows: "In the course of the arguments in this case, attention was called to the failure to call certain witnesses, Dr. Painter and Dr. Roth, who, it was claimed, might by their testimony, have shone light upon the situation before you. It is true where a party fails to call to the witness stand a witness who, if so called, could testify as to any material fact and where it is within the sole or peculiar power of that party to call him, you are entitled to infer that had he so testified, that testimony would be unfavorable to the party failing to call him and to consider that fact in arriving at your decision. You must, however, first reasonably conclude that the person not called could give material testimony, and that it is within the sole or peculiar power of the parties failing to call him to put him to use on the witness stand. If it was equally within the power of either party to call and neither does, then there is no basis for [an] inference that his testimony, if given, would be unfavorable to either party." The defendants excepted to this portion of the court's charge. The charge as given was contrary to our law. See *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 675; *Ezzo* v. *Geremiah*, 107 Conn. 670, 677; 2 Wigmore, Evidence (3d Ed.) § 285. No reason was given and no explanation was advanced for the failure to offer the doctors as witnesses. We cannot say on the facts of this case that the testimony of Dr. Painter and Dr. Roth would be comparatively unimportant, or cumulative, or inferior to what was already utilized; clearly, the testimony of the doctors who actually saw and treated the plaintiff would be superior in respect to the fact to be proved. See 2 Wigmore, op. cit. § 287. As in the *Secondino* case, supra, 677, "[t]he nature and extent of the

plaintiff's injuries were weighty issues in this case, and the error in the charge makes necessary a new trial on the issue of damages."

In the view which we have taken of this case, it is unnecessary to consider or discuss the claimed error that the award of damages was excessive.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiff to recover such damages as, on a new trial limited to the issue of damages, he may prove.

In this opinion PRUYN, J., concurred.[3]

---

[3] This appeal was heard before a three-judge panel consisting of *Pruyn,* presiding judge, and *Jacobs* and *Levine, Js.,* at a session of the Appellate Division held at Meriden on May 16, 1967. Shortly after oral argument and before decision was reached, *Levine, J.,* was appointed to the Court of Common Pleas. The parties to this action filed with the chief clerk a written stipulation as follows: "The parties to the above-entitled action hereby stipulate that the above case which was heard on May 16, 1967 may be decided by the following two judges: The Honorable Erving Pruyn, Presiding Judge, and the Honorable David H. Jacobs."