[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
These three cases involve the question of undue influence alleged to have been exerted over the decedent, Paul F. Molinari ("Decedent") when he executed a will and a deed shortly before his death.
The first case, Irene Burgess v. Appeal from Probate,
(D.N. CV92 0124132) is the appeal of Irene Burgess ("Burgess") from an order and decree of the Probate Court for the District of Greenwich ("Probate Court") denying Burgess's application for admission to probate of a will of the decedent dated April 8, 1991 ("1991 Will").
The second case, Irene Burgess. Appeal from Probate,
(D.N. CV92 0126428) is the appeal of Burgess from an order and decree of the Probate Court granting the application of George Molinari for admission to probate of the will of the decedent dated May 2, 1990 ("1990 Will"). CT Page 4200
The third case, George Molinari, individually and as executor of the estate of the decedent and as trustee of a trust created under the 1990 will ("D.N. CV92 0126602") is an action to set aside the quit claim deed dated April 8, 1991 and recorded in the Greenwich Land Records on April 9, 1991 in which deed the decedent conveyed in survivorship certain real estate to himself, Burgess and Burgess's mother, Vita Molinari. Both Burgess and Vita Molinari survived the decedent.
The court finds the following additional facts. In 1991, Burgess was a 41 year old woman from Macedonia. She had come to the United States in 1983 and became employed by Electrolux Corporation selling vacuum cleaners door to door. She met the decedent in the mid to late 1980s at a restaurant in Greenwich. She next saw the decedent in 1988 or 1989 when she stopped by his house to deliver vacuum cleaner supplies. She later returned to the decedent's house at 270 Taconic Road in Greenwich to deliver more supplies, and in the spring of 1989 a social relationship developed between the two. In May, 1989, Burgess had a party at her home at 30 Sheepshill Road, Greenwich, and invited the decedent. A few days after the party, the decedent moved into Burgess's house where she lived with her mother and other relatives.
In June of the same year, the decedent entered the Alcohol Unit at Greenwich Hospital and was discharged there from in July, 1989. In August 1989, the decedent married Burgess's mother, and on September 8, 1989, he executed a will naming Burgess as a beneficiary, as well as a durable power of attorney in her favor. He then went to live with Burgess and her mother in Newark, New Jersey and subsequently went with them to Yugoslavia.
The defendant returned to Greenwich about February 1990 and on March 16, 1990 he spoke to his attorney, Joseph Izzullo, about changing his will. He also revoked his power of attorney to Burgess. On May 2, 1990 he executed the 1990 will leaving his estate to members of the Molinari family, and naming his nephew George as executor. In Article 4 of that will, the decedent intentionally left no part of his estate to his wife, Vita.
In November of 1990, the decedent suffered a heart attack. After his release from the hospital, Burgess joined him at 270 Taconic Road in December, 1990. Shortly thereafter, the decedent executed a "Contract for Services" dated June 5, 1990, but signed CT Page 4201 December 8, 1990. The contract was prepared by Burgess's New York lawyer, and there is no evidence that the decedent consulted with an attorney before signing it.
In March, 1991, the decedent appeared at Attorney's Izzullo's office with Burgess to retrieve the 1990 will. On April 8, 1991 the decedent executed a third will in the offices of Burgess's Attorney Kevin Hoffkins. He also destroyed the 1990 will and executed a quit claim deed of his interest in the Taconic Road house to himself, Burgess and her mother, as joint tenants with the right of survivorship. That same month, Burgess left on a trip outside the continental United States, leaving the decedent in Greenwich, where he died on April 28, 1991.
The court first must address the issue of burden of proof. Where it is claimed that a will was executed by a testator under undue influence the burden is upon the contestants to prove such influence by a Preponderance of the evidence. Cullum v. Colwell,85 Conn. 459, 83 A. 695 (1912); Lockwood v. Lockwood, 80 Conn. 513,69 A. 8 (1908); Berkowitz v. Berkowitz, 147 Conn. 474,162 A.2d 709 (1960). In the appeal of the 1991 will, (D.N. CV92 0124132), the contestants are the Molinaris and they have the burden of proof in this case. Counsel for the Molinaris presses upon the court the well known exception to this rule invoked" . . . when it appears that a stranger, holding toward the testator a relationship of trust and confidence, is a principal beneficiary under the will and that the natural objects of the testator's bounty are excluded. The burden of proof, in such a situation, is shifted, and there is imposed upon the beneficiary the obligation of disproving, by a clear preponderance of evidence, the exertion of undue influence by him." Berkowitz v. Berkowitz, 147 Conn. 474, 476-77, 162 A.2d 709
(1960) (Internal citations omitted). "Where a will is in favor of a lawyer who draws it or advises as to his provisions; or where the will of a minor is made in favor of a guardian . . .; or where the will is in favor of a person occupying a clearly analogous position of trust; in such cases the burden of disproving undue influence is upon the proponent of the will;"Cullum v. Colwell, 85 Conn. 459, 462, 83 A. 695 (1912).
In this case the proponent of the will, Burgess, is a woman who was first a social friend of the decedent. There was evidence that there was later a sexual relationship between the two, and eventually when he married her mother, she became his stepdaughter. They lived together (with her mother and others) CT Page 4202 intermittently, and they entered into a contract whereby she was to take care of the decedent until his death. The court does not view this relationship as a "clearly analogous position of trust" described in Cullum v. Colwell, supra, 462, and thus it remains to those opposing the will to prove ". . . by a preponderance of the evidence . . ." that it was executed under the undue influence of the proponent. Lockwood v. Lockwood, 80 Conn. 513,69 A. (1908).
The next issue presented to the court is whether under all the facts and circumstances the contestants have proven that the 1991 will of the decedent was executed under the "undue influence" of Burgess. "The degree of influence necessary to be exerted over the mind of the testator to render it improper, must from some cause or by some means be such as to induce him to act contrary to his wishes, and to make a different will and disposition of his estate from what he would have done if left entirely to his own discretion and judgment. That his free agency and independence must have been overcome, and that he must, by some dominion or control exercised over his mind, have been constrained to do what was against his will, and what he was unable to refuse and too weak to resist. But that moderate and reasonable solicitation, entreaty or persuasion, though yielded to, if done intelligently and from a conviction of duty, would not vitiate a will in other respects valid". Lee v. Horrigan,140 Conn. 232, 237, 98 A.2d 909 (1953). "Direct evidence of undue influence is often unavailable and is not indispensable".Lancaster v. Bank of New York, 147 Conn. 566, 573, 164 A.2d 392
(1960); Undue influence need not be proved by direct evidence; it may be inferred from all the circumstances. Salvatore v. Hayden,144 Conn. 437, 440, 133 A.2d 622 (1957). On the other hand, the mere opportunity of exerting undue influence is not alone sufficient. There must be proof not only of undue influence but that its operative effect was to cause the testator to make a will which did not express his actual testamentary desire. Hillsv. Hart, 88 Conn. 394, 401-402, 91 A.2d 257 (1914).
When Burgess found the decedent at his home in Taconic Road in 1989, he was an elderly alcoholic who lived alone, and was a bachelor all of his life. Shortly after this meeting he attended a party at Burgess's house to which she had invited him. Soon after the party, the decedent moved in with Burgess and her family, including her mother Vita. In July 1989, the decedent was admitted to the Alcohol Recovery Unit of Greenwich Hospital. When he was discharged, he married Burgess's mother and executed a CT Page 4203 will favoring Burgess on September 8, 1989. The haste with which the foregoing events occurred raises the first suspicion in the court's mind as to whether the decedent's "free agency and independence have been overcome". See Lee v. Horrigan, supra,140 Conn. 232, 237. The marriage of the decedent to Vita, the mother of Burgess, is also curious if not bizarre. There was evidence that the decedent had a sexual relationship with Burgess, and there was no evidence of any kind of a close relationship with Vita. There was also evidence that Burgess asked the decedent to marry her mother, because if she, Burgess, were to remarry, she would lose the alimony she is receiving from a prior marriage. It was "a business deal", the decedent told his lawyer in September, 1989. Burgess would take care of him, so he would not have to go into a nursing home, he said. There was further evidence that the decedent believed he had been "conned" into the marriage and that it was a "nightmare"; that the marriage was Burgess's idea, and that he married the mother so he and Burgess could continue "their affair". The marriage between the decedent and Vita was never consummated.
With Burgess no longer around, he executed the 1990 will naming the natural objects of his bounty as his beneficiaries. His nephew, a man who brought dinner to him virtually every night of the week, prior to the arrival of Burgess at the scene, was named executor. The decedent revoked a power of attorney he had given to Burgess the prior fall, and instituted an action for a dissolution of his marriage to Vita. There is no evidence of undue influence in respect to the 1990 will, or even that the Molinari family was aware of his execution at the time. There was some evidence as to a partition: action by the decedent's brother concerning the Taconic Road property, but certainly insufficient evidence to connect it in any way with the execution of the 1990 will.
In November, 1990, the decedent suffered a heart attack. Upon his discharge from the hospital he returned to Taconic Road and was joined in December, 1990 by Burgess who lived there with him until his death.
In the same month of December, the decedent executed a "Contract for Services" which provided that Burgess would care for him until his death, and would under no circumstances place him in a nursing home. In return, the decedent was to immediately transfer all of his assets of every description to Burgess and himself as joint tenants. There is evidence in the testimony at CT Page 4204 trial that the decedent was very concerned about being required to go to a nursing home, and the court believes he signed the document because of that concern. The agreement was prepared by Burgess's lawyer and was evidently not reviewed by counsel on behalf of the decedent. This is further evidence of the dominion that Burgess exercised over the decedent.
By January 1991 Burgess had begun to consult with her Connecticut attorney, Kevin Hoffkins, about a will for the decedent. Mr. Hoffkins met once with the decedent, in January of 1991, to discuss a will with him, at which conference Burgess was present. He did not see the decedent again until April 8, 1991 when the 1991 will was signed. In between those meetings Hoffkins had numerous telephone conversations about the decedent's will. Some of these were with Burgess, and some were conversations with the decedent with Burgess on the line.
The decedent saw the 1991 will for the first time on April 8, 1991 in Hoffkins's office. He did not read it, and it was not read to him. The attorney testified that he explained the provisions of the will to the decedent at the time. He also had prepared, at the request of the decedent in a telephone conversation with Burgess on the line, a quit claim deed of his real estate interest in the Taconic Road property. The decedent executed the will and the quit claim deed and destroyed the 1990 will on April 8, 1991 in Hoffkins's office with Burgess present. In this will, the decedent named Burgess as the executrix, and her son Daniel Burgess as successor. He left his entire estate to Burgess, and in the event of her prior death, to Vita. Shortly after the execution of his will by the decedent, Burgess left on a business trip without the decedent who died alone twenty days after the will was signed on April 28, 1991.
The court has considered all of the testimony and other evidence presented at trial, and has made logical inferences therefrom; see Lancaster v. Bank of New York, supra, 147 Conn. 566,573; and the court is convinced that a "foundation was laid for a reasonable inference that the will . . ." of April 1991 ". . . was not such as the testator would have made if left entirely to his own discretion. . . . Downey v. Guilfoile,93 Conn. 630, 107 A. 562 (1919). The contestants have proven to the satisfaction of the court, and by a preponderance of the evidence, that the defendant acted in response to, pressures exerted by Burgess, and out of a fear of life in a nursing home; that his free agency and independence was overcome and that by CT Page 4205 some dominion or control exercised over his mind by Burgess, he was constrained to do what was against his will. Lee v. Horrigan,
supra, 140 Conn. 232, 237. It is clear that in the execution of the will in September of 1989, and of the 1991 will, the full force of Burgess's presence was felt by the decedent; and when Burgess was not present, as in the spring of 1990, the decedent expressed what the court believes was his true intent as to the disposition of his estate, and naming the natural objects of his bounty. In the execution of the 1991 will, the decedent was under the undue influence of Irene Burgess.
In the second case, Burgess appeals from the decree of the Probate Court admitting the 1990 will to probate on the grounds that said will was procured by undue influence. There is no evidence whatever that such was the case, nor that the beneficiaries of that will, family members of the decedent, were even aware of its execution. There is also a glaring lack of proof that a partition suit by the decedent's family regarding the real estate on Taconic Road was in any way connected with the execution of the 1990 will.
Because the court has found undue influence in the 1991 will at which time the 1990 will was destroyed, it is found that the destruction of the latter will was also a product of undue influence.
The third case seeks a declaratory judgment that the quit claim deed executed on April 8, 1991 was procured by the undue influence of Burgess and asks the court to set aside the deed and declare it null and void. As in the two probate appeals, the plaintiff in this case has proven that the execution of the quit claim deed, occurring at the same time as the 1991 will, and granting Burgess and her mother an interest in decedent's real estate, was procured by the undue influence of Burgess.
Accordingly, the court (1) dismisses the plaintiffs appeal from Probate in the matter of Irene Burgess, Appeal from Probate,
(CV92 0124132); (2) dismisses the plaintiffs appeal from Probate in the matter of Irene Burgess, Appeal from Probate, (D.N. CV92 0126428); and (3) enters judgment setting aside and declaring the quit claim deed dated April 8, 1991 from Paul Molinari to Paul Molinari, Irene Burgess and Vita Molinari, as joint tenants and recorded in the Greenwich Land Records in Book 2114, p. 91, to be null and void. CT Page 4206
So Ordered.
Dated at Stamford, Connecticut this 7th day of May, 1996.
D'ANDREA, J.