[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
re Motion To Set Aside Verdict
The court has before it the plaintiff-CCF-1's timely motion to set aside a defendant's verdict (P.B., Sec. 320), which verdict was directed by the court at the conclusion of the plaintiff's case in chief. Both parties were heard in oral argument, and each has submitted memoranda in support of its position.
1. Background and Pretrial History
The plaintiff-company, CCF-1, Inc., was formed by its parent CT Page 7719 company Flagg Energy Development Corporation in the 1980s to develop a co-generation plant at Hartford Hospital. The plant was to produce steam and generate electricity for sale to both the Hospital and Connecticut Light Power Company. Pursuant to the design and construction of the facility, and to carry out its purpose, the defendant General Motors, Allison Gas Turbine Division (Allison), manufactured two 571 gas turbine engines to create the steam and the electricity to be generated at the facility. The purchase order for the two gas turbine packages was dated November 12, 1987, and therein it was guaranteed that the engines would conform to Allison specifications, including design life criteria and performance standards.
The engines (#506 and 507) were delivered to the site in May and June, 1988. From the beginning the plaintiff had complaints about engine performance and breakdowns which necessitated repairs and/or removal from service. Eventually a settlement was reached (July 31, 1990 Settlement Agreement), pursuant to which Allison, inter alia, assumed the duties of an intermediary vendor of the engines, as those duties were set forth in the 1987 purchase order.
In 1992 the plaintiff instituted suit against Allison for losses and damages it claimed were caused by the allegedly defective engines. As a result of pretrial rulings by the court,[1] claims for relief, including breach of warranties of fitness for intended purpose and merchantability, were disposed of and no longer a part of the case at the time of trial. In this connection and following the granting of summary relief the plaintiff filed notice of reservation of its right to appeal the judgment disposing of the above-described claims.
2. Trial Proceedings and Verdict
The sole cause of action which remained in the case at trial was an alleged breach by Allison of a repair or replace warranty. That warranty which was a part of the 1987 purchase order provides as follows:
 "All material and equipment furnished under this order shall be guaranteed by the Seller against defects, and Seller agrees to replace without charge to Purchaser said material and equipment, or remedy any defects latent or patent not due to ordinary wear and tear or due to improper use of maintenance which may develop within one year from the CT Page 7720 date of acceptance by the Owner, or within the guarantee period set forth in applicable plans and specifications, whichever is longer."
Pl. Exh. 11, Pur. Order, Gen. Cond. 2.
Following the start of trial the court ordered plaintiff's counsel to file a revised complaint, removing from its pending complaint those warranty claims which, by virtue of pretrial rulings, were no longer a part of the case. Two revised complaints were filed in which, as to each, allegations were present clearly reasserting claims of breach of warranties of fitness and merchantability. The defendant objected to each proposed revision, and the court sustained the objections. See Tr. (5-8-96), pp. 4-6. Thereafter, the plaintiff filed a "Fourth Revised Complaint", as to which the defendant filed its responsive pleading.
Counsel for the plaintiff conceded, as reflected in the fourth revision, that although he had semantically modified his client's claims, the changes would not alter his intended presentation of evidence:
 The Court: "I've looked at the Fourth Revised Complaint. At first blush it would appear to be a vast improvement in terms of the problems we have over the Third Revised Complaint, but I don't know that that fact eliminates our problem.
Mr. Wenick: It does not.
 The Court: As I would assume, you expect or at least intended to present evidence regarding failures to meet specification requirements, design life expectancy, evidence of that sort, under — certainly under the Third Revised Complaint and I guess what you're telling me is you also expect to give this — notwithstanding the revision, the most recent revision, you would expect to present that same kind of evidence under this Complaint.
Mr. Wenick: Yes, your Honor." Tr. (5-9-96), pp. 3, 4.
In order to avoid continuing objections by the defense to evidence outside the scope of the repair or replace warranty, plaintiff's counsel chose to make an offer of proof. The offer CT Page 7721 was intended, as follows, to make a part of the record evidence which, in the plaintiff's view, was admissible and material based on its interpretation of the described warranty:
 The Court: "Are you indicating then that you intend to present your case in the same manner that you intended to do so from the beginning?"
 Mr. Wenick: "Yes . . . . However, I now understand your Honor's view from yesterday morning that may mean that some of the evidence that I thought was within that scope your Honor may not think is within that scope. So to the extent there is a difference, the difference is that there will be more extensive offers on the record, in light of your Honor's indication of how it is likely to rule on evidentiary questions. I think that that still may be a quicker process, and we may still be able to avoid lengthy examination of some of those witnesses. If a mechanism is put in place as to the individual witnesses that would allow me to avoid the tedium of detailed questions and detailed questions, so forth, so on, I think that we — that I must cross that bridge when I come to it in order to preserve the record and to protect my client's interest."
Tr. (5-9-96), pp. 13, 14.
Predicated on his disagreement with the court's ruling and his desire to offer evidence consistent with his client's interpretation of the repair or replace warranty, plaintiff's counsel presented the remainder of his case in the above-described manner and in the jury's absence. In connection therewith voluminous exhibits were received for identification only, and the defendant's objections, both procedural and on the merits, were preserved for the record throughout.
At the conclusion of the offer of proof the plaintiff moved for reconsideration of prior evidentiary rulings and for a mistrial. Tr. (5-17-96), pp. 12-18. The court denied both motions. See Addendum-1 (pp. 1a, 2a) appended hereto. Thereupon the plaintiff rested its case, and the defendant moved for a directed verdict [Tr. (5-17-96), pp. 19-32], which motion the court granted. See Addendum-2 (p. 3a) appended hereto. The jury returned a defendant's verdict.
3. Arguments and Findings of the Court
CT Page 7722
The thrust of the plaintiff's motion to set aside the jury's verdict (5-22-96) is spelled out in paragraph 2. There, the plaintiff asserts the following:
 "During the course of the trial of this matter, the Owner offered, but the Court improperly refused to receive, evidence to show that the GM engines (the `Engines') were defective."
The claim is a distortion of the court's rulings, the basis for which was enunciated on several occasions in rulings on offers of evidence. Of paramount concern to the court in making its rulings was not whether the proffered evidence demonstrated a defect in the engines, but whether the claimed defect fell within the purview of the plaintiff's cause of action; viz., breach of the repair or replace warranty. The plaintiff's somewhat generalized description (also in paragraph 2) of the court's claimed erroneous exclusion of evidence demonstrates the plaintiff's `everything but the kitchen sink' approach to damages, and its intent not to limit its case to necessary repair or replacement of parts and equipment occurring within the first year following acceptance:
"Specifically, the Court improperly excluded evidence that:
 The Engines did not comply with terms of the 1987 Purchase Agreement or the specifications that were incorporated into and made a part of the 1987 Purchase Agreement;
 The Engines did not conform to the oral descriptions that were incorporated into the 1987 Purchase Agreement concerning time that the Engines would operate between removals and the cost to maintain them;
 The Engines did not conform to GM's own model specifications;
 The Engines did not conform to GM's own design criteria and standards;
The Engine's design was defective; CT Page 7723
 The fuel nozzles for the Engines leak, cause coking of liquid fuel, and distort the flame during operation, which results in premature failures;
 The Engines were not merchantable or fit for their intended purpose; and
 The Owner was denied the substantial benefit of its bargain."
In attempting to justify its claim that evidence material to the above should not have been excluded, the plaintiff argues that those warranties removed from the case by summary adjudication somehow remain and are embraced in the repair or replace warranty. In spite of the clear language of the warranty that is before this court and its intended purpose, the plaintiff urges the court to equate the word "defect" as used in the repair or replace warranty with any deficiency in, or non-conformance with, engine specifications and performance standards:
 Attorney Wenick: "Because the Court specifically left open the count on the obligation to remedy defects, and because the cases cited and the contract itself uses the term `defect' as a failure to perform specifications, it had been plaintiff's intention to present evidence showing that the model 571 engine did, indeed, fail to conform to specifications and, therefore, was a defect, and it was something that under your judge's prior order I understood General Motors had an obligation to remedy." Tr. (5-8-96), p. 9.
It is this court's finding that, to construe the repair or replace warranty as the plaintiff urges (above), and thereby equate it with other warranties assuring engines 506 and 507 conformance with specifications and their merchantability and fitness for the intended purpose, would require resort to a fallacious reasoning. As another court explained it:
 "The guarantee against defects in workmanship and material is clearly a repair guarantee that does not contemplate other remedies, while the performance guarantee claims made by the plaintiff look to remedies beyond repairs. To extend the life of the performance guarantees by way of repair guarantees would confuse the remedies, would be a form of bootstrapping, and would greatly increase, without CT Page 7724 agreement, the [defendant's] liability. . . . [S]uch a result would circumvent the very purpose of Sec. 42a-2-725."
 City of Cincinnati, Ohio v. Dorr-Oliver, Inc., 659 F. Sup. 259, 266 (D.Conn. 1986).
The repair or replace warranty is not a warranty of future performance backdated to the period of design. "Rather, such a warranty simply provides that if a product fails or becomes defective, the seller will replace or repair [material and equipment] within a stated period." Ontario Hydro v. ZalleaSystems, Inc., 569 F. Sup. 1261, 1266 (1983); see also H. Sand Co., Inc. v. Airtemp Corp., 738 F. Sup. 760, 771 (S.D.N.Y. 1990).
Apart from the above, the reasoning advanced by the plaintiff would render other warranties duplicitous, if not meaningless, producing a result which flies in the face of settled law recognizing that "parties ordinarily do not insert meaningless provisions in their agreements." A.M. Larson Co. v. Lawlor Ins.Agency, Inc., 153 Conn. 618, 621-22 (1966). On the contrary, "[w]hen interpreting a contract, [courts] must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result." O'Brien v. United StatesFidelity Guaranty Co., 235 Conn. 837, 843 (1996).
The court rejects the plaintiff's argument that the purchase order's repair or replace warranty breathes life into those warranties dismissed as time-barred. Its heavy reliance on a quite different repair provision as interpreted by the Second Circuit Court is misplaced. See Long Island Lighting Co. v. ImoIndustries, Inc., 6 F.3d 876 (2d Cir. 1993). Therein a vendor specifically agreed to make "adjustments or modifications to enable the equipment to achieve its warranted performance." Id.
888. That court in upholding liability interpreted the clear language of the warranty before it and concluded that time-barred warranties did not diminish the vendor's obligation:
 "[Seller] promised [buyer] that it would repair the generators if they failed to achieve the warranted performance in place. . . .[Seller] breached its promise to repair the generators when it maintained that it was not obligated to make the necessary repair." (underlining added). Id. 890. CT Page 7725
Neither logic nor the law justifies such construction of the warranty provision that is before this court.
As to the central issue presented, the language of the parties' purchase order is clear and definitive. What they intended, therefore, is a question of law. Levine v. Massey,232 Conn. 272, 277-78 (1995). Accordingly, the court should not look outside the four corners of the purchase order, thereby to impart ambiguity and a resultant expansion of the meaning thereof when, in fact, the ordinary meaning leaves no room for ambiguity in the first place. Id. 279; Venture Partners Ltd. v. SynapseTechnologies. Inc., 42 Conn. App. 109, 113-14 (1996).
In short, it is the court's finding that the engine failures of which the plaintiff complains, even if deemed to be defects in the broadest context of that term, are not the kind of defects which impose liability on the defendant under the repair or replace warranty for the damages the plaintiff claims.
4. Decision on Plaintiff's Motion
It is axiomatic that in considering the propriety of a directed verdict the action of the trial court should be examined in the light most favorable to the plaintiff. Console v. Nickou,156 Conn. 268, 270 (1968). Similarly, it is an accepted fact that a directed verdict is not favored and should be granted only when a jury could not reasonably and legally reach any other conclusion. Petyan v. Ellis, 200 Conn. 243, 244 (1986). Despite the above impediments to such disposition, the plaintiff's theory of recovery as hereinbefore addressed dictates the result. This memorandum is prepared because it is "sound practice" to do so;Lancaster v. Bank of New York, 147 Conn. 566, 573 (1960); and because it may be helpful in connection with anticipated appellate review. It should not be construed, however, as that which the court views as the only valid basis for granting the relief which the defendant sought.[2] Rather, it is that ground advanced by the defendant which this court deemed most persuasive and, more important, controlling in directing the jury's verdict and in deciding the instant motion.
The plaintiff's motion to set aside the verdict is denied.
Gaffney, J.