HENRY L. STANTON v. DONALD W. GRIGLEY, ADMINISTRATOR (ESTATE OF JULIUS J. ZDANOWICZ)

LOISELLE, BOGDANSKI, LONGO, PETERS and SIDOR, Js.

Argued March 8—decision released May 22, 1979

*John M. Gesmonde,* for the appellant (plaintiff).

*Roger Sullivan,* with whom was *Donald E. Stevens,* for the appellee (defendant).

SIDOR, J. The plaintiff in this appeal claims error in the trial court's judgment dismissing his appeal from an order and decree of the Probate Court. The trial court determined that the deceased, Julius J. Zdanowicz, on the date of the execution of the document purporting to be his last will and testament, lacked testamentary capacity and was under undue influence. The plaintiff, Henry L. Stanton, the testator's son, appealed from that decision.

The trial court found the following facts: On August 21, 1976, Julius Zdanowicz died leaving a wife, five children and twelve grandchildren. He left a document dated June 30, 1976, purporting to be his last will, and attested to by two witnesses, Edward R. Finnegan and Nellie K. McGuinness. The authenticity, admissibility and execution of that will are admitted by the parties. The issues of testamentary capacity and undue influence are the focus of this appeal.

The testator's will was drafted by Attorney Joseph J. McGuinness at the request of the plaintiff. In preparing the instrument Attorney McGuinness used for reference a copy of a purported will of the testator, dated May 19, 1975, which had been deliv-

ered to McGuinness by the plaintiff and which bore notations made by the plaintiff of the changes to be reflected in the new will. Attorney McGuinness supervised execution of the will at his office. Nellie McGuinness, his wife and legal secretary, had never met the testator before attesting to the will, never saw him afterwards, and was out of the office part of the time the testator was there. Edward Finnegan likewise had never met nor has he seen the testator since that day, talked only briefly with him then, and heard him respond to just two questions from Attorney McGuinness. Prior to June 30, 1976, Attorney McGuinness, who had represented Henry Stanton, had never seen or represented the testator, nor has he seen him since. Attorney McGuinness discussed the contents of the will with the plaintiff Henry Stanton, who was present at the execution of the will.

The will of June 30, 1976, differed in several regards from the will of May 19, 1975. The later will was much more favorable to the plaintiff, his wife, and three of his four daughters. On the other hand, the testator's wife, two daughters, and four of his other grandchildren suffered decreases in the later will. The wife, previously entitled to a savings account and to the residue of the estate, would now receive only $5000. Both purported wills designated the plaintiff as executor.

Until March 30, 1976, the testator resided with his daughter, Evelyn Gladdys, and her family. On or about April 1, 1976, he was removed to a nursing home, but after four days during which he displayed unhappiness to the point of violent behavior, the testator went to live with his son Henry, the plaintiff, and his daughter-in-law, Irene, and their family.

Henry and the testator had not maintained a close association for about ten years prior to the move. Some time after April 4, and before his death, the testator's bank account containing approximately $10,000 was transferred from his sole ownership into a survivorship account between him and the plaintiff. Less than a month after the execution of the will in question, the plaintiff contacted Dr. Nicholas Nickou to arrange for an examination of the testator in order to obtain the appointment of a conservator for the testator. Subsequently the plaintiff received that appointment.

Several witnesses testified at the trial to the mental condition of the testator around the time he executed the will of June 30, 1976. His physician since 1960, Dr. Nickou, whose practice includes geriatric medicine, concluded from observations he made as an examining physician and otherwise that the testator, suffering from deterioration brought on by arteriosclerotic cerebral vascular disease, and from loss of memory, thereby lacked the capacity needed to make a rational disposition of his estate on June 30, 1976. Leonard Zdanowicz, a son of the testator, for whom Leonard had worked forty-one years, observed his father's "failing health, mental illness and debility over a period of time," and related the testator's failure once to recognize his own wife. Evelyn Gladdys, the daughter with whom the testator lived prior to his short stay in the nursing home, also observed her father's degeneration, including his failure once to recognize her and another relative, both of whom he saw frequently.

The plaintiff maintains that the trial court erred in concluding "on the basis of the evidence presented" that the testator lacked testamentary

capacity and was subject to undue influence. The trial court's conclusions can be attacked only if it is claimed that the *findings* do not support them. *Associated East Mortgage Co.* v. *Highland Park, Inc.,* 172 Conn. 395, 406, 374 A.2d 1070 (1977); *Windham Community Memorial Hospital* v. *Willimantic,* 166 Conn. 113, 117, 348 A.2d 651 (1974). We will assume that the plaintiff meant to frame his argument in that manner.[1]

A trial court's conclusions are tested on appeal by determining whether the findings logically support the legal conclusions, and whether the trial court properly applied the relevant law. *West Haven* v. *United States Fidelity & Guaranty Co.,* 174 Conn. 392, 398, 389 A.2d 741 (1978); *Belford* v. *New Haven,* 170 Conn. 46, 55, 364 A.2d 194 (1975); *Simmons* v. *Budds,* 165 Conn. 507, 513, 338 A.2d 479 (1973), cert. denied, 416 U.S. 940, 94 S. Ct. 1943, 40 L. Ed. 2d 291 (1974); Maltbie, Conn. App. Proc. § 165. We hold that the trial court's conclusions on both issues followed logically from the facts found.

Before addressing the plaintiff's general attack on the trial court's conclusions, we look to the findings which the plaintiff attacked in his assignment of errors. We see no reason to alter the findings in the manner suggested. The plaintiff asserts that the trial court erred in refusing to find facts set forth in his draft finding and in finding certain facts without evidence. The plaintiff has not discussed these errors in his brief. Normally the failure to brief errors assigned is deemed an abandonment of those points. *Lovett* v. *Atlas Truck Leasing,* 171 Conn. 577, 580, 370 A.2d 1061 (1976); *Housing Authority* v. *Dorsey,* 164 Conn. 247, 248–49, 320

---

[1] The plaintiff's counsel in fact indicated as much at oral argument.

A.2d 820, cert. denied, 414 U.S. 1043, 94 S. Ct. 548, 38 L. Ed. 2d 335 (1973); Maltbie, Conn. App. Proc. § 327. The plaintiff did, however, rely in legal argument on his version of the facts, and did print an appendix, portions of which could be viewed as support for that version. Even according the plaintiff the benefit of our perusal of the testimony printed in the appendix, however, we see no reason to correct or to add to the trial court's finding. As to the draft findings which the plaintiff would have us include, two proposed findings are not supported by any evidence printed in the appendix and therefore cannot be claimed; Practice Book, 1978, § 3040 (c); *Sachem's Head Assn.* v. *Lufkin,* 168 Conn. 365, 368, 362 A.2d 519 (1975); and the remaining draft findings are not material, admitted or undisputed facts. The trial court, in weighing the credibility of testimony, could conclude that other evidence was more probative. Practice Book, 1978, § 3039; *Yale University* v. *New Haven,* 169 Conn. 454, 462–63, 363 A.2d 1108 (1975); *Gutowski* v. *New Britain,* 165 Conn. 50, 56, 327 A.2d 552 (1973). Testimony that goes uncontradicted does not thereby become admitted or undisputed; *Yale University* v. *New Haven,* supra, 463; nor does the strength of a witness's belief raise it to that level.

As for the plaintiff's claim that some facts were found without evidence, the defendant's appendix amply supports the trial court's finding and therefore the finding must stand. *Scribner* v. *O'Brien, Inc.,* 169 Conn. 389, 390–91, 363 A.2d 160 (1975); see *Hartford National Bank & Trust Co.* v. *DiFazio,* 177 Conn. 34, 39–40, 411 A.2d 8 (1979).

I

The plaintiff claims that the trial court's findings do not support the conclusion that the testator, Julius Zdanowicz, lacked testamentary capacity at the time he executed the will in question.

The burden of proof in disputes over testamentary capacity is on the party claiming under the will. *Pastir* v. *Bielski,* 174 Conn. 193, 194, 384 A.2d 367 (1978); *Wheat* v. *Wheat,* 156 Conn. 575, 578, 244 A.2d 359 (1968); *Comstock* v. *Hadlyme,* 8 Conn. 254, 260–61 (1830). While there is a presumption of sanity in the performance of legal acts, the party that presents a will still bears the burden of going forward with his proof, and only then does the burden shift to the opponents to prove incapacity. *Wheeler* v. *Rockett,* 91 Conn. 388, 392, 100 A. 13 (1917); *Sturdevant's Appeal from Probate,* 71 Conn. 392, 399–400, 42 A. 70 (1899); *Knox's Appeal from Probate,* 26 Conn. 20, 21 (1857). The trial court correctly placed the burden of proof in this case on the plaintiff. And the court properly applied the well established test for testamentary capacity, i.e., that the testator have mind and memory sound enough to know and understand the business upon which he was engaged at the time of execution. *City National Bank & Trust Co.'s Appeal,* 145 Conn. 518, 521, 144 A.2d 338 (1958). The ultimate determination of whether a testator has measured up to this test is a question of fact for the trier. *Id.* While there may have been conflicting testimony offered at trial, we cannot say as a matter of law that, on the facts found, the trial court erred in concluding that the testator failed to meet the measure of testamentary capacity. As detailed in the finding and nar-

rated in our summary, supra, the behavior of the testator around the time he executed the will adequately catalogs the conduct of a person lacking the requisite capacity. The plaintiff failed to carry the burden of proof on this issue.

## II

The burden of proof where undue influence is alleged, as it was by the defendant, is on the contesting party. *Berkowitz* v. *Berkowitz,* 147 Conn. 474, 476, 162 A.2d 709 (1960); *Lockwood* v. *Lockwood,* 80 Conn. 513, 523–24, 69 A. 8 (1908). The type of confidential relationship which would shift that burden to the proponent is not present in the instant appeal. See *Berkowitz* v. *Berkowitz,* supra, 476–77; *Page* v. *Phelps,* 108 Conn. 572, 587, 143 A. 890 (1928); *Dale's Appeal from Probate,* 57 Conn. 127, 144, 17 A. 757 (1889). Therefore, the trial court correctly required the defendant to carry the burden on this issue.

As in the first error claimed, an analysis of the proper test for undue influence as it would apply to the facts found reveals that the court's conclusion must stand. The levels of susceptibility and pressure needed to prove undue influence have been fully summarized by this court. *Lee* v. *Horrigan,* 140 Conn. 232, 237–39, 98 A.2d 909 (1953); see *Lancaster* v. *Bank of New York,* 147 Conn. 566, 573–74, 164 A.2d 392 (1960). Where there is no direct evidence of influence a factual foundation supportive of a reasonable inference that, but for the plaintiff's actions, the testator would have made a different disposition, is sufficient to sustain a finding of undue influence. *Lee* v. *Horrigan,* supra, 237–38; *Lancaster* v. *Bank of New York,* supra, 573–74. The significant accretion in the bequests to the plaintiff and his

immediate family, the concurrent reduction in provisions for other relatives, and the arrangement by the plaintiff of the later will's execution, supply ample proof that the testator disposed of his estate in a manner contrary to a freely exercised will. The plaintiff's appeal on the issue of undue influence therefore must fail. The finding supports the conclusion, which was drawn from the proper application of the law.

There is no error.

In this opinion the other judges concurred.