## HARTFORD NATIONAL BANK AND TRUST COMPANY
### v. STANLEY V. TUCKER ET AL.

LOISELLE, BOGDANSKI, LONGO, PETERS and SIDOR, Js.

Argued April 10—decision released July 24, 1979

*Stanley V. Tucker*, pro se, the appellant (named defendant).

*Neil E. Atlas*, with whom, on the brief, was *Paul A. Hudon*, for the appellee (plaintiff).

SIDOR, J. The defendant, Stanley V. Tucker, has appealed from a judgment for foreclosure by sale, and for reimbursement to the plaintiff, Hartford National Bank and Trust Company, of certain necessary expenses and for attorneys' fees. The trial court concluded that the defendant was in

default on his note which was secured by a mortgage on property owned by the defendant in Torrington, Connecticut.

The facts found by the trial court are as follows: On February 24, 1966, the defendant Stanley V. Tucker executed a promissory note to the plaintiff, Hartford National Bank and Trust Company, which was secured by a mortgage of premises known as No. 711 East Main Street, Torrington, Connecticut. By the note Tucker agreed to pay to the bank the sum of $235,000 with interest at the rate of 6 percent per annum upon the unpaid balance, payable in equal monthly installments of $1684.95 over a period of twenty years. The note provided that, in the event of default in the payment of the monthly installments *or* in the payment of taxes or municipal assessments, for a period of thirty days after any of the same would become due and payable, the whole of the note should immediately become due and payable at the option of the holder. In the event of default, the note further provided for payment by Tucker of all costs of collection, including reasonable attorneys' fees incurred in any action brought to collect on the note or to foreclose the mortgage securing it, or to sustain the lien of the mortgage. Also on the same day Tucker executed a conditional assignment of rents in favor of the bank.

As of October 31, 1975, Tucker was current in his payment of principal, interest and insurance premiums. On December 23, 1975, however, Tucker was notified formally by the bank that foreclosure of the mortgaged premises would be instituted because of a default arising from Tucker's failure to pay taxes due the city of Torrington. The fore-

closure proceedings were instituted by the bank on January 16, 1976. At that time the amount of Tucker's default in the nonpayment of taxes to the city of Torrington was alleged to be approximately $29,000 for the lists of 1973, 1974 and 1975. After an amended return was filed, the defendant filed an answer and six special defenses and five counterclaims.

On October 21, 1975, the bank had exercised its right to collect rents due from the mortgaged premises and continued to exercise this right until April 30, 1976, through its agent Robert C. White. Between November 1, 1975 and April 30, 1976, Tucker interfered with the collection of rents by the agent. From late 1976 through early 1977, Tucker delivered three checks, each in the amount of the monthly mortgage payments, to the bank. The first two checks, tendered on December 15, 1976 and on March 16, 1977, were forwarded to the bank's attorney who placed them in his client's fund. The last check, delivered on April 28, 1977, was placed in the bank's general escrow account and was not applied to Tucker's loan.

By charter, the city of Torrington appoints its tax collector under a bidding process. The tax collector guarantees payment of all taxes and he is subrogated to all rights of the city in the collection of delinquent taxes. As of November 15, 1977, the city of Torrington was owed $42,207.21 in unpaid taxes.

The trial court also found that the unpaid principal balance on the promissory note was $163,909.21, and that the interest due through November 29, 1977, amounted to $21,281.42. In addi-

tion, the bank spent the following sums in relation to the mortgaged premises: (1) $3173.12 for fuel oil; (2) $180 to remove two trees; (3) $432.04 costs and $1196 attorneys' fees in bankruptcy proceedings commenced by Tucker; (4) $5864.50 in attorneys' fees for various other legal proceedings instituted by Tucker; and $1400 in attorneys' fees for the trial in the instant case, which ended on December 2, 1977.

The trial court found the issues on the complaint and counterclaims for the plaintiff. The court concluded that Tucker was in default on the note as a consequence of his arrears in the payment of taxes due the city of Torrington. Taxes were due in the amount of $42,207.21 for the tax years of 1973, 1974, 1975 and 1976. The unpaid balance of the mortgage due the bank on default was found to be $163,909.21, and interest due the plaintiff came to $21,281.42 plus a per diem rate to date of payment. The court ordered Tucker to reimburse the bank for the expenses, costs, attorneys' fees and appraiser's fees, and, to cover the unpaid balance and interest on the note, ordered the sale of the mortgaged premises at public auction. The defendant requested foreclosure by sale and participated in the selection of the committee that was to conduct the sale. Thereafter, this appeal was taken.

The defendant has assigned error by the trial court in finding facts set forth in eleven paragraphs, and in refusing to find the facts set forth by the defendant in fifty-eight paragraphs of his draft finding. There is no discussion of these claimed errors in the defendant's brief. "Normally the failure to brief errors assigned is deemed an abandonment of those points. *Lovett* v. *Atlas Truck*

*Leasing,* 171 Conn. 577, 580, 370 A.2d 1061 (1976);
*Housing Authority* v. *Dorsey,* 164 Conn. 247, 248–49,
320 A.2d 820, cert. denied, 414 U.S. 1043, 94 S. Ct.
548, 38 L. Ed. 2d 335 (1973); Maltbie, Conn. App.
Proc. § 327." *Stanton* v. *Grigley,* 177 Conn. 558,
562–63, 418 A.2d 923 (1979). The defendant did,
however, print an appendix, portions of which
could be read to support these claims; see *Dana-
Robin Corporation* v. *Common Council,* 166 Conn.
207, 210n, 348 A.2d 560 (1974); however, we see no
reason to correct or to add to the trial court's find-
ing. Many of the draft findings are not supported
by evidence printed in the appendix; Practice Book,
1978, § 3040 (c); others are not material, admitted,
or undisputed facts; *William G. Major Construc-
tion Co.* v. *DeMichely,* 166 Conn. 368, 370n, 349 A.2d
827 (1974); and the rest are merely rewordings of
the court's findings and will not be substituted for
that language. *Baker* v. *Baker,* 166 Conn. 476, 479n,
352 A.2d 277 (1974). The findings attacked are
amply supported by the plaintiff's appendix and
must stand. *Stanton* v. *Grigley,* supra, 563.

The remaining assignments of error, as briefed,
ostensibly cover nine issues, some of which overlap
and others of which contain multiple claims. More-
over, these claims mix the relevant and irrelevant,
issues of fact and of law, and are otherwise difficult
to disentangle. In accordance, however, "with our
established policy to allow great latitude to a liti-
gant who, either by choice or necessity, represents
himself in legal proceedings, so far as such latitude
is consistent with the just rights of any adverse
party, we have carefully examined and considered
each of the claims of the defendant so far as it is
possible to understand them." *Bitonti* v. *Tucker,*
162 Conn. 626, 627, 295 A.2d 545, cert. denied, 409

U.S. 851, 93 S. Ct. 62, 34 L. Ed. 2d 94 (1972); *Connecticut Light & Power Co.* v. *Kluczinsky,* 171 Conn. 516, 519–20, 370 A.2d 1306 (1976).

As a threshold matter, we have carefully analyzed the defendant's claim that the trial court lacked jurisdiction, because a want of jurisdiction in that court would eliminate our authority to consider the issues raised on this appeal. *Hartford Kosher Caterers, Inc.* v. *Gazda,* 165 Conn. 478, 486–87, 338 A.2d 497 (1973). Before trial the defendant raised by a plea in abatement,[1] which was sustained, a "defect" in the process which, he claims now, the court allowed the plaintiff to amend at a time beyond the limit permitted by General Statutes § 52-48.[2] This claim is without merit. The defect of which the defendant complains is the omission of his apartment number in the address, which was correct as to street and building number. The amended return, which included the apartment number, was not filed until August 13, 1976, almost seven months after the date of process, January 30, 1976. The defendant claims that the plaintiff's failure to file the amended return within the sixty-day limit set forth in § 52-48 effectively terminated the court's jurisdiction.

It is not the policy of our courts to interpret rules and statutes in so strict a manner as to deny a liti-

---

[1] Practice Book, 1963, § 93. As of 1978, pleadings addressed to the court's jurisdiction are called motions to dismiss. Practice Book, 1978, § 142.

[2] "[General Statutes] Sec. 52-48. RETURN DAY OF PROCESS. Process in civil actions, including transfers and applications for relief or removal but not including summary process actions, if brought to the superior court or to the court of common pleas may be made returnable on any Tuesday in any month and all process shall be made returnable not later than two months after the date of such process. . . ."

gant the pursuit of its complaint for mere circumstantial defects. *Johnson* v. *Zoning Board of Appeals,* 166 Conn. 102, 111, 347 A.2d 53 (1974); *Greco* v. *Keenan,* 115 Conn. 704, 705, 161 A. 100 (1933). Indeed, § 52-123 of the General Statutes protects against just such consequences, by providing that no proceeding shall be abated for circumstantial errors so long as there is sufficient notice to the parties.[3] There is no doubt in this case that the defendant was apprised of the contents of the complaint by successful service. The plaintiff submitted an affidavit by the sheriff reciting that he had made service on the defendant at the proper apartment. The amended return only made the original more specific; it did not deny the defendant his right to notice of the complaint's allegations. Whether or not the plea in abatement of the defendant here should have been sustained; see *Corden* v. *Zoning Board of Appeals,* 131 Conn. 654, 658, 41 A.2d 912 (1945); it is clear that an amendment could be entertained beyond the sixty-day limit to cure the minor defect in the writ, and without requiring a new service of process under General Statutes § 52-72. Section 52-72 requires the new service of the writ and process when they are amended only to correct process "which has been made returnable to the wrong return day *or is for any other reason defective* . . . ."[4] (Emphasis added). The purpose

---

[3] "[General Statutes] Sec. 52-123. CIRCUMSTANTIAL DEFECTS NOT TO ABATE PLEADINGS. No writ, pleading, judgment or any kind of proceeding in court or course of justice shall be abated, suspended, set aside or reversed for any kind of circumstantial errors, mistakes or defects, if the person and the cause may be rightly understood and intended by the court."

[4] Section 52-72, in relevant part, reads: "[General Statutes] Sec. 52-72. AMENDMENT OF PROCESS. Any court shall allow a proper amendment to civil process which has been made returnable to the wrong return day or is for any other reason defective, upon payment

of this statute is to provide for amendment of otherwise incurable defects that go to the court's jurisdiction. 1 Stephenson, Conn. Civ. Proc. § 106 (2d Ed.). Those defects which are merely voidable may, in the trial court's discretion, be cured by amendment, and do not require new service and return date, so long as the defendant was not prejudiced. 72 C.J.S., Process § 107. Nor does General Statutes § 52-54,[5] which requires abode service, create a lack of jurisdiction in all cases where the apartment number is omitted. As stated in *Clover* v. *Urban,* 108 Conn. 13, 16, 142 A. 389 (1928), "[t]he chief purpose of this requirement [of abode service] is to ensure actual notice to the defendant that the action is pending. *Grant* v. *Dalliber,* 11 Conn. 233, 237; *Clegg* v. *Bishop,* 105 Conn. 564, 569, 136 Atl. 102." This purpose was accomplished well before the original return date and thus there was no need to reacquire jurisdiction by new service under § 52-72.

Upon determining that the trial court had jurisdiction, we reviewed the defendant's other claims of error, so far as they are severable from his wholesale attack on the factual findings of the court. The interpretation of testimony is the sole province of the trier and therefore objections to the findings

of costs taxable upon sustaining a plea in abatement. Such amended process shall be served in the same manner as other civil process and shall have the same effect, from the date of such service, as if originally proper in form. . . ."

[5] "[General Statutes] Sec. 52-54. SERVICE OF SUMMONS. The service of a writ of summons shall be made by the officer reading it and the complaint accompanying it in the hearing of the defendant or by leaving an attested copy thereof with him or at his usual place of abode. When service is made by leaving an attested copy at the defendant's usual place of abode, the officer making service shall note in his return the address at which such attested copy was left."

which the defendant wove into his claims of law will not be discussed. We cannot retry the case. *Abbott* v. *Bristol,* 167 Conn. 143, 146, 355 A.2d 68 (1974); *Frechette* v. *John Meyer of Norwich, Inc.,* 164 Conn. 559, 560, 325 A.2d 286 (1973).

As for the defendant's other claims, insofar as they can be understood, we are satisfied that the trial court's conclusions are supported by its findings. *Stanton* v. *Grigley,* 177 Conn. 558, 563, 418 A.2d 923 (1979); *West Haven* v. *United States Fidelity & Guaranty Co.,* 174 Conn. 392, 398, 389 A.2d 741 (1978); *Bitonti* v. *Tucker,* 162 Conn. 626, 627, 295 A.2d 545 (1972); Maltbie, Conn. App. Proc. § 165.

There is no error. The case is remanded to the Superior Court for the setting of a new date for a public sale of the mortgaged premises and other necessary formalities not inconsistent with this opinion.

In this opinion the other judges concurred.