[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The appellant in this case has appealed by authority of Conn. Gen. Stats. 52-592 from an order of the Woodbridge Probate Court admitting to probate the will of Paul Litvenko, dated September 12, 1988. In his Reason of Appeal, the appellant alleges lack of testamentary capacity, and undue influence on the part of Kathleen Barra and Attorney Thomas Malec. At the close of appellant's evidence, a motion to dismiss the testamentary incapacity claim was granted, the court having determined that the proponent met its burden of proof and the appellant failed to produce evidence of lack of capacity.
Based on a preponderance of the credible evidence, the court finds the following material facts were proven by a preponderance of the evidence. The testator died on February 7, 1989 at the age of sixty-nine, leaving a will dated September 12, 1988. By the terms of the will, after five bequests of $10,000. to individuals including Angelo DeLeo, a friend, and John Letskus, the brother of the residuary legatee, the residue of the estate was left to Kathleen Barra. Kathleen Barra was the daughter of Mary Letskus, the testator's girlfriend of two years duration, who was very ill at the time of execution. The contingent beneficiaries were Kathleen Barra's husband and issue. Aside from his own holdings, Paul Litvenko was the sole beneficiary of his brother Wasil's estate of approximately $350,000. which was then being administered.
On September 12, 1988, the testator called Attorney Thomas Malec's office to set up an appointment for a will. The appointment was made for the same day. The conference concerning the will lasted approximately forty-five minutes; the execution took another twenty minutes Litvenko had retained Malec in 1985 CT Page 841 probate his brother's estate. Malec represented Litvenko from 1985 to 1988. They met approximately twenty-five times during that period of time. At the will conference, Litvenko informed Attorney Malec that his next of kin was a cousin in New York with whom he was not close. He stated that his girlfriend, Mary Letskus, was very ill. During the meeting, he referred to a notepad and told Attorney Malec that he wished to make five bequests of $10,000., leaving the residue to Kathleen Barra. Attorney Malec did not ask questions concerning assets, names and addresses of next of kin, social security numbers, prior marriages, step-children, adoption or tax issues. Kathleen Barra drove Litvenko to Attorney Marra's office, as well as to a doctor's appointment, on that day. She had not driven him anywhere in the past. Attorney Malec was named co-executor of the will, along with Kathleen Barra, at Litvenko's request. Malec was not a beneficiary under the will. Malec was convinced, based on his conversation with the testator, that Litvenko's instructions reflected his intentions and that he was not being influenced by anyone. Malec spoke alone with Litvenko concerning the contents of the will.
Litvenko was a strong personality and not easily swayed by anyone. He was quiet and reserved and had a strong will. He was not outwardly affectionate. He was not close to the plaintiff, who lived in New York State. He spoke little to friends about his cousin. Angelo DeLeo was a close friend. After the will was executed, Litvenko told DeLeo that he had made a will and that DeLeo would receive $10,000. He also told him that his residuary estate would go to his girlfriend's daughter. The testator had been married one time in his life. Several old friends of the testator, Michael Beletsky, and Alice Smith, did not recall the testator mentioning the Barras during their conversations with him. Litvenko entrusted his papers to another old friend, Gerardo Ocampo. On the day of the funeral, Ocampo was asked by Attorney Malec to deliver Litvenko's papers, which Ocampo then had in this possession, to his office. In October of 1988, DeLeo told Barra that he had read Litvenko's will and that she was named residual beneficiary and co-executor.
The will was properly executed and witnessed on September 12, 1988, with the witnesses signing a self-proving affidavit.
Kathleen Barra and Attorney Malec had a telephone conversation sometime between September 12, 1988 and the date of Litvenko's death in 1989. On the date of the funeral, when Beletsky, Ocampo and Smith brought Litvenko's papers to the office, Malec stated that Barra was "in the right place at the right time". In late July, 1988, Mrs. Barra called Eleanor Petuch from the hospital, where Litvenko was a patient, and inquired as to the correct spelling of his name. Although Kathleen Barra and CT Page 842 the testator were not close, they had a friendly relationship and talked to each other. Mrs. Barra did not perform any special services for Litvenko such as cooking, housekeeping, or driving nor did she handle his affairs. Litvenko was very ill in July, 1988. In October of 1988, he was transferred from the hospital to Arden House. Sometime that month, Barra told Ocampo that Litvenko had given her all his money.
It is well established in Connecticut that the burden of proving testamentary capacity as well as due execution rests upon the party claiming under the will. Stanton v. Grigley, 177 Conn. 558,564 (1979); Boschen v. Second National Bank of New Haven,130 Conn. 502, 504 (1944). "While there is a presumption of sanity in the performance of legal acts, the party that presents a will still bears the burden of going forward with his proof, and only then does the burden shift to the opponents to prove incapacity." Stanton, supra at 564.
The established test for testamentary capacity is ". . . that the testator have mind and memory sound enough to know and understand the business upon which he was engaged at the time of execution. The ultimate determination of whether a testator has measured up to this test is a question of fact for the trier." Stanton, supra at 564.
In this case, the proponents met their burden of establishing testamentary capacity as well as due execution and the appellant failed to offer contrary evidence. "Ordinarily, the burden of proof on the issue of undue influence rests on the one alleging it, and this is true whether the issue arises in a will contest or in a proceeding in equity to set aside a conveyance. . . . In will contests, we recognize an exception to this principle when it appears that a stranger, holding toward the testator a relationship of trust and confidence, is a principal beneficiary under the will and that the natural objects of the testator's bounty are excluded. . . . The burden of proof, in such a situation, is shifted, and there is imposed upon the beneficiary the obligation of disproving, by a clear preponderance of evidence, exertion of undue influence by him. . . . We have said, however, the law `does not brand every legacy as prima facie simply because the legatee enjoys the trust and of the testator. . . . [I]t is only where the beneficiary is, or has acquired the position of, a religious, professional or business adviser, or a position closely analogous thereto, that the rule of public policy can be invoked which requires such a beneficiary to show that he has not abused his fiduciary obligation.' . . . It has been stated frequently that the rule should not be extended beyond the limitations placed upon it in its recognition." CT Page 843
Appellant claims that, in this case, all of the requirements for shifting the burden of proof are satisfied. The court disagrees. While Kathleen Barra is a stranger and the principal beneficiary under the will, Attorney Malec is not. He is named only as a co-executor and has no other interest. Whatever financial gain he will have is directly related to services performed and subject to probate court approval. He does not have such interest as would bring him within the rule set down in Berkowitz.
Further, while Attorney Malec had a position of trust and confidence with the testator, Kathleen Barra did not. Thus, that condition is not satisfied. Clearly, there was no fiduciary obligation on the part of Kathleen Barra. Her relationship was not of a confidential nature so as to relieve the contestants of the burden. Page v. Phelps, 108 Conn. 572, 584 (1928). While it is not necessary to discuss the remaining condition, the court notes that, while the appellant, as a cousin, is next of kin to the testator, the evidence did not demonstrate the existence of a relationship so close that it was unnatural for him to be excluded, particularly in the light of Litvenko's close relationship with Kathleen Barra's mother.
The conditions for shifting the burden of proof not being met, the burden remained on the appellant. The law concerning what is necessary to meet that burden of proof is clear.
In Bates v. Wheeler, 109 Conn. 733 (1929) the court stated, at page 734:
". . . we find little or no support for the contention that the will was procured through undue influence exercised by Mr. or Mrs. Wheeler. At the most it rests upon unstable inference and insecure suspicion. The trial court was right in holding that neither by direct evidence, nor by inference or opportunity offered to exert undue influence, was there a safe foundation of material facts proven, or of inferences which fairly and convincingly lead to the conclusion of undue influence. That `should not be rested upon surmise or suspicion.' or upon inferences drawn from inconsequential facts. Hills v. Hart,88 Conn. 394, 397, 91 A. 257."
In the present case, the issue of undue influence was left to surmise and conjecture. There is no evidence of Kathleen Barra's intervention in persuading the testator against his will to make her the residuary legatee. While there is no evidence of a close relationship between the testator and Mrs. Barra, there is evidence of a close relationship between the testator and Kathleen Barra's mother. At the time Litvenko instructed Attorney Malec to draw the will and at the time of execution, he appeared to be in CT Page 844 control and capable of making appropriate decisions.
While it may be true that Kathleen Barra was "in the right place at the right time", there is no evidence from which the court could conclude that she exerted her influence over Litvenko to secure that position. In this case, there was no evidence of undue influence which had the operative effect of causing the testator to depart from his actual testamentary desires. Lancaster v. Bank of N.Y., 147 Conn. 566 (1960). That being the case, the appellant has failed to meet his burden of proof. Accordingly, the appeal is dismissed.
BARRY R. SCHALLER, JUDGE