[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this matter the plaintiff brings a complaint in eight counts seeking damages from the defendant for events allegedly occurring during the period of her employment as a dental assistant from November 1990 to August 1996. The general thrust of the complaint is grounded in a claim of sexual harassment with several theories of liability being advanced in the various counts.
The First Count speaks of sexual harassment in the workplace in violation of Sec. 46a-60 (a)(8) of the Connecticut General Statutes.
The Second Count claims damages caused by the defendant making written and oral statements concerning the plaintiffs sexual preferences and orientation which adversely affected the plaintiff.
The Third Count restates the acts of the defendant and alleges that the same created an unreasonable risk of causing the plaintiff emotional distress.
The Fourth Count claims that the defendants actions as relates to the claim of sexual harassment created a reasonable apprehension of fear of bodily harm to her damage.
The Fifth Count sets out a claim of battery by the alleged touching of the plaintiff by the defendant.
The Sixth Count claims that the intentional acts of the defendant constituted an invasion of the plaintiffs right to privacy.
The Seventh Count claims an interference with the plaintiffs opportunity to engage in employment with a dental office subsequent to the termination of her employment with the defendant.
The Eighth and final Count sets out a claim of violation of Section 46a-60
(a)(8) C.G.S. Discriminatory employment practices prohibited — sexual harassment as it relates to the defendants actions during the course of her employment by the defendant. CT Page 6601
The evidence offered to the court in support of the plaintiffs complaint established an employment relationship with the defendant from November 1990 to August 1996 as a dental assistant. David Wiener D.M.D. had a growing dental practice over this period and employed generally 4-5
employees including the plaintiff.
Judith Gulia appeared as a witness for the plaintiff and testified (T-1, p. 15) that she observed the defendant running his hands through the plaintiffs hair while at the office and that early in the plaintiffs tenure as an employee the plaintiff indicated she was going to sue the defendant for sexual harassment (T-1, p. 16). She also said that she saw the defendant kiss the plaintiff at the office (T-1, p. 38). Ms. Gulia also testified that she was present when the plaintiff called a local radio station and said over the air that the defendant was the best employer she, the plaintiff, ever had. (T-1, p. 40) Defendant's Exhibit Eight is a birthday card that the office sent to the defendant on which the plaintiff wrote ". . . . Dr. David Wiemer the best boss in the whole wide world. Happy Birthday! Love Cathy." Also two sexually suggestive postcards (D. Exhs. 6 7) appeared on the office bulletin board in the employee's lounge and this witness assumed they were put up by Cathy. The plaintiff testified as to an intimate relationship she had with another female, one Joyce Wilson during the course of her employment (T-1, p. 88-90) but Gulia indicated that she didn't believe any such relationship existed (T-1, p. 23) contrary to the actual fact. She also testified that she had been fired by the defendant (T-1, p. 25) and had a pending contested compensation claim against the defendant. (T-1, p. 27. She also got cash payments by way of bonuses from Wiemer and failed to report this income on her tax returns. (T-1, p. 63)
Henry Razowski, the next witness offered by the plaintiff, was married to the plaintiff but the marriage was dissolved in 1991. However, he remained friendly with the plaintiff following the divorce and testified that the plaintiff never mentioned any problems of a sexual nature that she experienced with the defendant. (T-1, p. 65)
Caterina Razowski, the plaintiff, testified that she first objected to the defendants advances toward her about one year after she commenced her employment with the defendant (T-1, p. 79). In 1994 she quit and told the defendant she was going to sue him for sexual harassment (T-1, p. 82) but decided to go back to work and stayed for another two years. She testified that during this entire period the defendant continued his unwanted advances toward her over her protests. At this same time she had an intimate relationship with a girlfriend but according to her, never complained to her girlfriend about any untoward actions by the defendant (T-1, p. 100). Yet during this period of claimed offensive conduct by the CT Page 6602 defendant there were family picnics and dinners and other social affairs to which the plaintiff invited the defendant (T-1, p. 102) and there were instances of the defendant making rather substantial loans and gifts to the plaintiff. She also during the course of her employment arranged for several members of her extended family to seek and obtain employment at the defendants office. (T-1, p. 101) In her deposition, (D. Exh. 12) she testified that on occasion she initiated office conversations regarding sex with co-workers during breaks but during her courtroom testimony, she denied discussing sex at the office. (T-1, p. 112)
According to Gail McKnight who was called as a witness on behalf of the plaintiff, the plaintiff complained to her that the defendant constantly followed her around, that he wouldn't leave her alone. (T-2, p. 13) This was not observed by other of the defendants' employees, namely Barbara Belotti, (T-2, p. 50), Janet Boston-Schairer (T-2, p. 114) as well as Dorothy Benedict who was related by way of marriage with the plaintiff. (T-2, p. 27) The size of the office was quite small, perhaps 1000 to 1200 square feet, (T-1, p. 31) and with 4-5 employees. It would appear that such conduct as described by the plaintiff would be readily observed by others in the office.
The plaintiff's employment was terminated by the defendant on August 28, 1996. The testimony indicates that the defendant explained to the plaintiff on firing her (T-1, p. 84) that his girlfriend had heard of his relationship with the plaintiff, objected and insisted the plaintiff be terminated. At that point the plaintiff testified that she was then going to sue the defendant for sexual harassment (T-1, p. 84). The plaintiff acknowledged that she might have made a remark to Joyce Wilson, the friend with whom she had an intimate relationship for several years during the period of her employment, that Dr. Wiemer was "a wimp that she had wrapped around her finger." (T-1, p. 119)
According to the defendant, he and the plaintiff in fact had a relationship that was something more than an employer-employee situation (T-2, p. 122) which involved hugging and kissing. From all of the evidence presented, this court cannot conclude that such activity was unilateral on the part of the defendant, but rather the conduct between the two was consensual in nature. Sec. 46a-60 (8) C.G.S. prohibits the imposition of sexual harassment upon an employment relationship and defines "sexual harassment" as any unwelcome sexual advances or any conduct of a sexual nature related to one's employment opportunities. The court concludes that the plaintiff has failed to sustain her burden of proof to establish the allegations set out in the First Count of her complaint by a preponderance of the evidence and accordingly, judgment may enter for the defendant on the First Count. CT Page 6603
As to the Second Count, the plaintiff claims that the defendant made statements regarding the sexual orientation of the plaintiff to the Commission on Human Rights and Opportunities (CHRO) and others with the intent to embarrass or humiliate her and caused her severe emotional distress. While a statement was made to CHRO in connection with the plaintiff's complaint regarding the plaintiff's sexual preferences, it is clear that this was done in defense of the plaintiff's claim against him (T-2, p. 147) and, as expressed in Stanley V. Tucker v. Elizabeth AnnBitonti, 34 Conn. Sup. 643, 647, the utilization of this information which came to him from one of his employees (T-2, p. 144) was privileged in this type of proceeding. There is nothing in the reward that indicates that the defendant made such utterances or publications maliciously but such were apparently made in defense to the plaintiff's claim that she suffered unwelcome sexual advances on the part of the defendant. The court does not conclude that such statements made by the defendant "were made maliciously or for an improper or unjustifiable motive." See Gaudiov. Griffin Health Services Corp., 249 Conn. 523, 546. Judgment may enter for the defendant on the Second Count.
In the Third Count the plaintiff claims that the defendant's unwanted attention constituted an unreasonable risk of causing the plaintiff emotional distress which might result in illness or bodily harm. However, the plaintiff testified that as regards any emotional distress she sought no treatment of any kind to alleviate any such condition or did she go on any type of medication. (T-1, p. 132) The court has previously indicated that the involvement of the plaintiff was consensual on her part and so concludes that the plaintiff has failed to establish by the better and weightier evidence her burden of proof as to the allegations in the Third Count. Judgment may enter for the defendant.
As to Counts Four and Five the plaintiff has omitted any references to these counts in the brief of April 21, 2000 and the court considers the claims made in those counts abandoned. See Hartford National Bank TrustCompany v. Tucker, 178 Conn. 472, 475. Judgment may enter for the defendant on Counts Four and Five.
As to Count Six the plaintiff appears to claim injury resulting from alleged outrageous and defamatory behavior on the part of the defendant. The court has previously determined that the evidence offered by the plaintiff falls short of establishing the validity of these allegations. Judgment may enter for the defendant.
In Count Seven the plaintiff claims that the defendant wrongfully objected to a colleague in the dental profession hiring the plaintiff as a dental assistant resulting in her not being employed by that individual. This is claimed by the plaintiff to be a tortious CT Page 6604 interference by the defendant to the plaintiff's loss. The evidence offered by Dr. Sonick (T-2, p. 94), the prospective employer referred to by the plaintiff, suggested that the discussions regarding her possible employment were only tentative and exploratory and that it was the plaintiff's conduct during the interview (T-2, pp. 96-98) which gave him pause as far as hiring her for his office. He further stated that the defendant upon inquiry indicated that she was an able and competent employee. The court does not conclude that any remarks made by the defendant to Dr. Snick were the proximate cause of her not obtaining employment as claimed. Judgment may enter for the defendant on Count Seven.
In the Eighth Count the plaintiff claims that her termination by the defendant on August 28, 1996 was wrongful and in violation of the public policy which prohibits sexual harassment in the workplace as set out in Sec. 46a-60 (a)(8) C.G.S. The court has previously concluded that the plaintiff has failed to demonstrate that she was subjected to any unwelcome sexual advances in the workplace in violation of the statute. Judgment may enter for the defendant on the Eighth and final count.
BY THE COURT,
 George W. Ripley II Judge Trial Referee