[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The appellant, Carole Neff, daughter of the late Elliot S. Whittemore, Sr., and coexecutor of his estate, appeals from the decision of the Putnam Probate Court, Scola, J., disallowing admission of a will because of the lack of testamentary capacity and undue influence. On July 5, 2000, the court held a trial de nova regarding these issues and the admissibility of the will.
The court finds the following facts. The testator and his wife had six children, viz, the appellant and James, Norman, Dexter, David and Elliot Whittemore, Jr. During their lives, this couple gave approximately equal monetary gifts to their children totaling around $190,000. The testator created an inter vivos trust on February 13, 1997, which trust provided that upon the testator's death, the trust assets would be distributed in equal portions to his wife and the six children. The testator also had a will which contained similar provisions regarding distribution of his estate.
Sometime in 1997, the testator's wife suffered a stroke which eventually resulted in her placement in a nursing home. Shortly thereafter, the testator joined his wife in residing at the nursing home. On May 18, 1998, his wife died.
The appellant notified her siblings of their mother's passing and arranged for her funeral to occur on May 21, 1998, in order to allow time for the children to return to Connecticut from their homes scattered across the country. of the six children, only the appellant and Elliot, Jr. attended their mother's funeral.
The testator was deeply offended, disturbed, and angered by the absence CT Page 9464 of his other offspring. He brooded daily by what he perceived to be their lack of respect and their ingratitude toward their mother and himself.
Under the testator's wife's will, the six children shared her estate equally, receiving about $50,000 apiece.
On May 27, 1998, the testator informed the appellant that he wished to amend his will and the inter vivos trust to exclude the children who failed to attend their mother's funeral. The appellant reminded the testator that one son, David, who missed the funeral service, had been very supportive of his parents, including traveling to Connecticut for a four-month stay to assist them before his mother's final illness. The testator acknowledged David's contribution and asked the appellant to arrange for his attorney, David Boyd, to visit him to prepare a new will.
The appellant contacted Attorney Boyd to meet with the testator at the nursing home. In his discussions with his lawyer, the testator was adamant in his desire to remove his sons Dexter, Norman, and James as beneficiaries under the trust and the will. He directed Boyd to prepare a new will effecting this change and a modification of the trust instrument. The testator was very clear that he wanted the three offending sons to receive nothing more than they had already received as gifts from him and from his wife and her estate. Also, he wished the new distribution of his estate to be forty percent to the appellant, forty percent to his son David, and twenty percent to his son, Elliot, Jr. The appellant was absent from these discussions between the testator and his lawyer.
Attorney Boyd prepared the new documents as directed and brought them to the nursing home for execution. At the testator's request, Richard Wheaton, a childhood friend of one of the testator's sons, acted as one witness and Boyd's legal secretary, Janis Beltis, acted as the other. On May 28, 1998, Boyd, Wheaton, and Beltis met with the testator at the nursing home. Again, the appellant was absent from this meeting. Initially, Boyd met privately with the testator to review the terms of the new will and trust instrument. The testator understood the provisions in these documents. In the presence of the witnesses, the testator declared one document to be his last will and signed the same. The witnesses signed and swore to affidavits attesting to these facts and that the testator appeared to have sound mind and memory. The will and trust instrument comported with the testator's wishes regarding the fate of his estate upon his death.
On May 27, 1998, the testator was ninety-two years old, suffered from, among other ailments, coronary and peripheral vascular disease, heart CT Page 9465 failure, emphysema, diverticulosis, anemia, hypothyroidism, partial deafness, and had recently broken his arm in a fall. At that time, he took a variety of medications including Darvocet, a narcotic derivative, and Trazodone, a mild antidepressant. Despite these afflictions and medications, the testator was mentally lucid and oriented to person, place, and time. Throughout his life, he was strong-willed and later on curmudgeonly. He retained these characteristics on May 28, 1998. Although he had occasional periods of forgetfulness and confusion, for the most part, his mental state was sound and stable.
 I
In an appeal from a probate court, the Superior Court conducts a trial de novo and exercises the limited statutory jurisdiction of a probate court, Pastir v. Bleiski, 174 Conn. 193, 194 (1978). The burden of proof is on the proponent of a will to establish due execution and testamentary capacity, Id. The well-established test for testamentary capacity is whether the testator had mind and memory sufficient to know and comprehend the business at hand, Stanton v. Grigley, 177 Conn. 558, 564
(1979). This test necessarily involves inquiry as to whether the testator was aware of the natural objects of his bounty, Falk v. Schuster,171 Conn. 5, 9 (1976).
Regarding the testator's mental capacity, the court heard the testimony of his attending physician, a supervising nurse in charge of his care at the nursing home, Attorney Boyd, the two witnesses to the execution of the will, and his daughter, the appellant. The court found the testimony of these witnesses to be credible. At the time he decided to alter his will and trust, reviewed the new will with Attorney Boyd, and executed the same, the testator was of sound mind and memory, knew the nature and extent of his estate, and those persons who were the natural objects of his bounty.
An unusual disposition of property can be some evidence tending to show that a testator was unaware of the natural objects of his bounty and lacked testamentary capacity, Falk v. Schuster, Supra. In this case, however, the revised distribution scheme actually confirms the testator's awareness of the persons who were the natural objects of his bounty. The exclusion of bequests to three of his children was motivated, in part, by the testator's resentment toward those of his offspring who displayed, in his opinion, disrespect for their parents by failing to attend their mother's funeral. Indeed, this specific elimination from further sharing of his wealth demonstrates that the testator was well aware of his relationship to these three sons and excluded them because of that recognition and the breach of filial duty as he saw it. CT Page 9466
The testator and his wife had made substantial gifts and bequests to their children at earlier times. The unfortunate bitterness engendered by the lack of attendance at his wife's funeral which resulted in the disinheritance of three of his sons may seem vindictive, but it was the product of a mentally competent testator. The court concludes that the appellant has satisfied her burden of proving, by a preponderance of the evidence, that her father possessed the requisite capacity to make the will which was duly executed.
 II
Turning to the claim of undue influence, the burden of proof as to this issue rests on the party contesting admission of the will, Stanton v.Grigley, Supra, 565. The degree of influence necessary to invalidate a will must be such as to induce the testator to act contrary to the testator's own wishes and produce a different will and disposition of the estate than the testator would have created if left to his or her own discretion and judgment, Lee v. Horrigan, 140 Conn. 232, 237 (1953). Volition and independent judgment must have been overcome by some dominion or control exercised over the testator's mind, Id. The testator's will must be too weak to resist the desires imposed upon the testator by another, Id.
The court finds that the appellees, James, Dexter, and Norman Whittemore, have failed to prove that the appellant, their sister, exercised undue influence over their father which generated a new will disposing of his estate contrary to his own wishes. It was the testator, not the appellant, who initiated the conversation in which the testator expressed his intention to change his will to disinherit those of his children who failed to attend their mother's funeral. The testator, despite advanced age, illness, and medication, remained a strong-willed, "cantankerous" man whose judgment and volition were not overpowered by the appellant.
The appellant did remind the testator this his son, David, had contributed effort and time to assist his parents despite some hardship to himself. This reminder persuaded the testator to retain David as a beneficiary under the new will, but that decision was the testator's. "[M]oderate and reasonable solicitation, entreating or persuasion, though yielded to, if done intelligently and from a conviction of duty" fails to vitiate an otherwise lawful will, Lee v. Horrigan, supra.
Consequently, the testor's will, dated May 28, 1998, is admitted.
Sferrazza, J. CT Page 9467